[Civ. No. 13899. Fourth Dist., Div. Two. June 5, 1975.]

MELVIN A. JARCHOW et al., Plaintiffs and Respondents, v. TRANSAMERICA TITLE INSURANCE COMPANY, Defendant and Appellant.

918

922

924

---

## COUNSEL

Holzwarth & Unsworth, John A. Bergen, Charles W. Unsworth and James A. Kennedy for Defendant and Appellant.

Landels, Ripley & Diamond, Earl M. Ripley and Greig A. Gowdy as Amici Curiae on behalf of Defendant and Appellant.

Regan, Davidson, Drummy & Garrett and Stephen C. Drummy for Plaintiffs and Respondents.

---

## OPINION

KERRIGAN, J.—Two married couples were interested in acquiring a parcel of land in the City of Placentia. Prior to opening escrow, they ordered a preliminary title report from a title company in Fullerton. After receiving the report indicating there were no significant clouds on the title, they decided to purchase the land for commercial development and entered into an escrow with the sellers at the same title company. At the close of escrow, they received a title insurance policy. A few days later, an adjacent landowner informed the buyers that he and his wife held a recorded easement for ingress and egress purposes across the northerly 20 feet of the subject property—a strip of land they used regularly as a roadway in going to and from their residence.

The buyers requested the company to eliminate the neighbor's easement inasmuch as neither the preliminary title report nor the title policy referred to the existence of the easement. The title company refused to take any action. After retaining counsel, the buyers sued the

neighbor to eliminate the easement and the title company for breach of contract and negligence.

Following a nonjury trial, the court held the buyers were entitled to a quiet title decree against the neighbor and to $7,270 damages against the title company ($7,100 attorney's fees, plus $170 for loss of use of the 20-foot strip).

Shortly before commencement of trial, the buyers were permitted to file a supplemental complaint against the title company for the purpose of recovering general and punitive damages as a result of the latter's tortious conduct in failing to discover, disclose or eliminate the easement. The supplemental complaint was based on several theories: fraud, deceit, malicious breach of contract, bad faith and negligent infliction of emotional distress. In any event, the supplemental complaint was filed with the understanding that adjudication of the issues raised in it would be deferred until the issues tendered in the complaint had been resolved.

Following the court trial and the filing of an amended supplemental complaint, a jury was empaneled for the purpose of resolving the supplemental issues. The jury awarded *each* of the four buyers $50,000 in general damages. However, in answer to special interrogatories, the jury found that the title company's conduct was *not* fraudulent, outrageous, malicious or oppressive; consequently, no punitive damages were awarded.

The title company appeals from the $200,000 judgment entered on the jury verdicts.

Although stated in varying ways, the title firm contends that the buyers were not entitled to damages as a matter of law for negligent infliction of emotional distress nor for bad faith; that the court erred both in rendering certain jury instructions and in refusing to give certain proffered instructions; that the court erred in admitting prejudicial evidence; and that the verdicts were excessive.

We have determined that the buyers pleaded and proved that they were entitled to damages for breach by the insurer of the covenant of good faith and fair dealing and for negligent infliction of emotional distress; that the court properly instructed the jury on all material issues; that there was no serious error in the admission of evidence; and that the damages awarded were fair and reasonable.

■ In affirming the $200,000 judgment, we hold that when a title company insures a buyer of real property against liens and encumbrances of record and negligently fails to discover or disclose a recorded lien or encumbrance or fails to exclude a known recorded lien or encumbrance from coverage and, upon being notified of the existence of a recorded lien or encumbrance, unjustifiably refuses to take any legal action to clear the title or eliminate the cloud, the insurer may be liable to the insured in compensatory damages for any emotional distress which results.

## FACTS

In early June 1970, real estate broker Melvin A. Jarchow and building contractor William A. Canavier and their wives ("plaintiffs") became interested in a three-acre parcel of real property located in the city of Placentia owned by Mr. and Mrs. LaBorde. Although the property was improved with a single family residence, plaintiffs felt it could be developed into a boat, trailer, and camper storage facility. They contacted Transamerica Title Insurance Company ("defendant") and requested the title officer in the Fullerton branch to search the state of the record title and furnish them with a preliminary report. In searching the title, defendant's employees discovered an easement from Frank F. Hill and Kate L. Hill (the LaBordes' predecessors in interest) to Pete J. Perez and Annie Perez ("Perez Easement" or "Deed"), which had been recorded on November 28, 1960. The deed purported to convey to the Perezes a 20-foot easement for ingress and egress purposes across the northern boundary of the subject property. But for some inexplicable reason, reference to the recorded Perez Easement was omitted from the preliminary title report furnished the plaintiffs. However, the report did indicate that in 1958, when the Hills conveyed the subject property to LaBordes, they had reserved a 20- x 395-foot easement for ingress and egress ("Hill Easement") across the northern boundary of the subject property.

After receiving the preliminary report, there were discussions between plaintiffs and Transamerica as to whether defendant would eliminate the Hill Easement as an exception to coverage and proceed to insure plaintiffs against the Hill Easement in the event the plaintiffs purchased the property. The escrow/title officer consulted with her superiors and obtained authorization to do so.

As a result of the title search and the conversations with the defendant, plaintiffs promptly entered escrow with the LaBordes. Transamerica

acted as escrow holder and also acted as title insurer with the understanding it would provide a standard form title insurance policy insuring title in the name of the buyers and insuring the LaBordes' security interests as holders of the first trust deed.

On August 27, 1970, the escrow closed and Transamerica issued the title policy.[1] The policy did *not* list the Hill Easement as one of the items excluded from coverage. Nor was the Perez Easement mentioned.

Within a few days after they took possession of the property, plaintiffs were informed that Perez claimed an easement for ingress and egress across their property. The Perezes owned the land immediately to the north of the subject parcel and Perez claimed that he had been using the 20-foot strip for access to his duplex residence since 1954; he also claimed that he had a deed from Hill which he acquired in 1960 which gave him easement rights over the northern strip of plaintiffs' property—a strip 20 feet wide and variously described as being from 132 feet to 263 feet long.[2]

Upon being advised of Perez' claims, plaintiffs contacted Transamerica and requested the company to take action to establish plaintiffs' title against the threat presented by the Perez Easement. Transamerica refused to initiate any action upon the plaintiffs' behalf, taking the fatuous position that it had no obligation to plaintiffs under the title policy since the Perez Deed had been excluded from coverage—notwithstanding the fact that the Perez Easement was not even mentioned in the exclusionary provisions of the policy.

After receiving the negative response from Transamerica, plaintiffs filed their initial complaint wherein they sought quiet title and injunctive relief against the Perezes and damages and attorney fees against

---

[1]The policy issued to the plaintiffs was prepared on a California Land Title Association Standard Coverage Policy Form; in essence, it provided that Transamerica insured the plaintiffs and the LaBordes against loss or damage in the sum of $72,000, together with any costs, attorney fees and expenses which the company may be obligated to pay and which the insureds sustain by reason of any defect in or lien or encumbrance on the title of the subject land as disclosed by the public records; excluded from coverage were all interests, claims, liens or easements which were not disclosed by the public records.

[2]Both the Hill Easement and the Perez Easement were 20 feet wide and each overlapped the other so far as they affected the plaintiffs' land. However, at one time, the Hills owned all or most of the tract of which the Perez parcel and plaintiffs' parcel were a part. Consequently, the Hills had reserved a long strip to provide access to their other parcels to the west of Perez.

Transamerica. Transamerica filed a cross-complaint to reform the policy, claiming that a mistake had been committed by the escrow/title officer in preparing the typing instructions in that the Hill Easement should have been excepted from coverage.

Pending the trial of the first action, plaintiffs applied for and obtained approval of their proposed site development plan for the storage facility from the City of Placentia. However, development of the property was conditional; Perez had notified the city that he had a deed which he claimed gave him a right to use the strip; plaintiffs' proposed plan would have blocked the access to the Perez property with a building; one of the conditions imposed by the city because of the Perez Deed was to keep that access open. Although they received approval of their plan, plaintiffs decided not to proceed with it because of the clouds on the title.

While the trial on the complaint and cross-complaint was pending, plaintiffs filed the supplemental complaint seeking general and punitive damages on the basis of the aforesaid tort theories. It was stipulated that the material allegations thereof would be deemed denied without the necessity of Transamerica filing a formal answer thereto. It was also agreed that a bifurcation occur, with the action on the complaint and cross-complaint having priority.

## THE COURT TRIAL

The first trial went on intermittently over a period of three months. At the conclusion thereof, the court handed down a memorandum decision and findings of fact and conclusions of law. Before entering judgment, the court amended the findings on two or three occasions. The material findings follow: The Perezes had no right, title or interest in the subject property by virtue of the deed from Hill or otherwise; in 1958, the Hills conveyed the subject parcel to the LaBordes and reserved the 20-foot strip for purposes of ingress and egress for the benefit of some other land they then owned; the deed containing the reserved easement was recorded; the use of the strip by Perez was with the consent of LaBordes, plaintiffs' predecessor in interest; said consent was subject to revocation by LaBordes and the plaintiffs; the consent had been revoked by the LaBordes' sale of the real property to the plaintiffs and by the plaintiffs' action in serving a notice of revocation upon Perez when they acquired the property; at the time Transamerica conducted its title search preparatory to the issuance of the preliminary report and at the time the plaintiffs' escrow closed on August 27, 1970, the Perez deed of

November 1960 and the Hill Easement of 1958 were both of record; the Perez Deed, being a void conveyance, was excluded from coverage under the Transamerica policy; however, Transamerica was negligent in preparing the preliminary report; Transamerica knew or should have known that plaintiffs would rely on the title search as evidenced by the preliminary report; the escrow/title officer discovered the existence of the Perez Deed before the preliminary report was prepared; Transamerica negligently failed to disclose the existence of the Perez Easement in the preliminary report; as a result of the negligence of Transamerica, plaintiffs temporarily lost the use of the strip from August 27, 1970, to May 1, 1973, and were entitled to $172 damages as a result thereof; plaintiffs also retained counsel and were entitled to attorney's fees in the sum of $7,184 to quiet title to the Perez Deed; however, Transamerica was *not* obligated to take legal action upon the plaintiffs' behalf to eliminate the Perez Easement;[3] as to the Hill Easement, it constituted a cloud on the title until May 1, 1973 (Transamerica obtained a quitclaim deed from Hills' successor-in-interest during the course of the first trial) and was insured against under the terms of the title policy; consequently, there was until May 1, 1973, a cloud or defect on the title insured against under the Transamerica policy; the Hill Easement, being a cloud on the title, resulted in *substantial damages*[4] to plaintiffs until removed in 1973; however, the property sustained no compensable detriment (e.g., from loss of use) despite the cloud created by the Hill Easement for two reasons: (1) Transamerica removed the cloud by obtaining a quitclaim deed from the Hills' successor-in-interest during the trial, and (2) plaintiffs failed to mitigate their damages since they did not develop the property pending the trial, although they could have done so; and finally, Transamerica was not entitled to reformation of the policy inasmuch as it had knowledge of the Hill Easement and agreed to insure against it.

### The Jury Trial

In October 1973, the jury trial commenced. The testimony on the liability issue was understandably repetitive of that introduced in the first trial. However, extensive testimony was presented on the proximate cause and damage issues, particularly with reference to the distress and anguish experienced by plaintiffs from the time they learned of the

---

[3]This finding is wrong as a matter of law. (See discussion, *infra.*)

[4]In his initial findings, the trial judge inadvertently found that plaintiffs suffered *no damages* as a result of the defect in the title resulting from the Hill Easement; however, prior to instructing the jury and prior to entry of judgment, the trial judge modified or corrected the findings and found plaintiffs suffered *substantial damages* as a result of the cloud created by the Hill Easement.

clouds on the title until the time the same were extinguished—a period in excess of two and one-half years.

Canavier, age 53, suffered from a prior heart condition; he experienced tension and nervousness in being required to engage in court litigation for a period in excess of two and one-half years; his doctor prescribed Valium; the worry from tension created by the litigation caused him extreme stress; he worried over his wife's condition and her reaction to the litigation; and Transamerica's refusal to proceed against Perez caused him great emotional anguish.

Mrs. Canavier testified to the following effect: After discovering the existence of the Perez Deed and after determining that Transamerica intended to do nothing about it, she became extremely nervous; she was unable to sleep and worried constantly over the litigation, the money situation, and what they would do with the property; she was also worried about the effect the litigation would have on her husband's heart condition; her observations of her husband's distress posed a worry to her over possible loss of security for herself and her daughter in the event her husband died; she was in constant turmoil over Transamerica's refusal to clear title to the property; she was worried about the coplaintiffs (the Jarchows) who put most of their savings into the project; she was constantly concerned about the paying of attorney fees and litigation costs; they had to continue payments on the property although its status and future remained clouded due to the litigation; she was shocked when she learned Transamerica refused to clear title and she was greatly disturbed about the mistake Transamerica made because she felt when you employ an expert in title matters you should receive a clear title; the litigation was long and costly; it took over two and one-half years to clear the title and their financial resources were being depleted in payments; the prospect of going to court disturbed her greatly; she was humiliated and embarrassed by having to discuss in public her private feelings and all the problems encountered with the property during the course of the litigation.

Jarchow, age 61, testified to the following effect: He was unable to sleep during the pendency of the litigation; he and his wife had put all of their reserve savings in the property; his wife was required to return to work after discovery of the Perez Easement; the burden of continuing to make payments on the subject property and the financial hardship imposed by litigation expenses was a constant source of worry; he was constantly concerned about the outcome of the litigation inasmuch as he

had invested everything he had in the property and he was not at all certain as to whether the title would ever be straightened out; he was shocked about Transamerica's failure to honor the title policy and its failure to report the clouds on the title; he was humiliated by his wife having to go back to work and being compelled to go to a psychiatrist; his wife would awake at night and sob and moan and worry over the pending litigation; his emotional distress resulted, at least in part, from Transamerica's failure to sue Perez or otherwise eliminate the easement.

Mrs. Jarchow testified that since the litigation had commenced she suffered from loss of sleep and had to go back to work; their finances were declining; the worry over the attorney's fees was constant; she felt their security was gone as a result of the continued litigation; her blood pressure rose and she did not feel well; inasmuch as they had invested most of their savings in the property, she had been required to neglect her teeth; she was worried over her husband's health and the attorney's fees and court costs; she was amazed to learn of Transamerica's mistake and shocked when it refused to correct its error; she could not believe they purchased an insurance policy for the purpose of protecting them and then received no protection from the insurer.

A court-appointed psychiatrist testified to the following effect: While the plaintiffs were deeply concerned about their investment being impaired and their supposed inability to develop the property because of the litigation, he was of the opinion that the litigation aggravated the symptoms, as did Transamerica's failure to honor its contractual commitments; in short, many of the plaintiffs' symptoms were directly attributable to the litigation and Transamerica's blatant refusal to clear the title.

After both sides rested, the court read its findings of fact and conclusions of law (as amended) to the jury and the jury was instructed it was bound thereby.

Special interrogatories were propounded to the jury. The jury answered that Transamerica did *not* act maliciously towards plaintiffs, did *not* defraud plaintiffs, and did *not* act outrageously towards the plaintiffs. Consequently, no punitive damages were awarded. However, the jury did expressly find, in answering the special interrogatories, that the plaintiffs' emotional distress was legally caused by defendant's negligence in failing to disclose the Perez Deed in the preliminary report and by defendant's conduct with regard to the cloud created by the Hill

Easement. The jury also found that *not* all of the emotional distress suffered by the plaintiffs was caused by failure to proceed with the planned development of the real property; in other words, the jury impliedly found that the emotional distress suffered by the plaintiffs was caused by the defendant's negligence and bad faith and the resultant worry and anguish flowing from Transamerica's utter failure to provide a good title or to do anything to correct its errors in connection with the search it made, the preliminary report it prepared, and the policy it issued.

## EMOTIONAL DISTRESS

Transamerica contends that plaintiffs' supplemental complaint failed to state legally sufficient facts to set forth a cause of action for the negligent infliction of mental distress; consequently, the trial court's refusal to grant its motion for judgment on the pleadings constitutes reversible error.[5]

Transamerica asserts that California law tracks the majority common law rule: Damages for emotional distress will not be awarded in an action for negligence unless that distress resulted directly from, or manifested itself in, physical injury. The rule requires physical "impact or injury," thus limiting the number of situations in which mental distress damages, occasioned by "merely negligent" behavior, may be recovered. (2 Harper & James, The Law of Torts (1956) § 18.4, pp. 1031-1032; 4 Witkin, Summary of Cal. Law (8th ed. 1974) § 548, pp. 2815-2816.) But American jurisdictions have been far from uniform in their application of the foregoing rule.

Those courts which have strictly applied the "impact or injury" standard have offered a variety of reasons for doing so. Four have received particular attention: (1) Emotional distress not so severe as to result in physical injury is too trivial a harm to merit recognition and remedy. (2) Mental distress is an injury which may easily be feigned and, without the impact or injury requisite, courts would be inundated with fraudulent claims. (3) Such injuries are too difficult to measure in dollar amounts, and courts should refrain from imposing speculative judgments

---

[5]A motion for judgment on the pleadings makes essentially the same challenge to a complaint as does a general demurrer—failure to state a cause of action. (4 Witkin, Cal. Procedure (2d ed. 1971) § 161, p. 2816.) In making such a motion, a defendant admits the truth of all material factual allegations in the complaint; and the plaintiff need only plead facts showing that he is entitled to some relief. (*Alcorn* v. *Anbro Engineering, Inc.,* 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

on defendants. (4) In most cases where physical impact and injury are absent, the causal link between a defendant's negligent act and a plaintiff's distress is sufficiently attenuated so that courts should refuse to adjudicate negligence actions alleging only mental distress damages; in other words, the proximate cause problem makes it nearly impossible for courts to place articulable limits on defendants' liability. (Rest. 2d Torts, § 436A, com.; 2 Harper & James, The Law of Torts (1956) § 18.4, pp. 1032-1034; Prosser, Law of Torts (4th ed. 1971) § 54, pp. 327-328.)

But application of the "impact or injury" rule—which denies court access to arguably injured parties—has resulted in a jurisprudential conflict of no small proportions. A fundamental principle of our system of justice is that for every wrong there is a remedy (e.g., an injured party should be compensated for all damage proximately caused by a wrongdoer); and departure from this principle may be justified only by the most compelling considerations. (*Crisci v. Security Ins. Co.,* 66 Cal.2d 425, 433 [58 Cal.Rptr. 13, 426 P.2d 173].) Since application of the "impact or injury" requirement constitutes a significant departure from the aforestated maxim, it has been the object of much criticism by both jurists and scholars.

The argument that emotional distress is a trivial injury is an antiquated concept which the advance of modern psychology has repudiated; research has shown that mental trauma can be just as debilitating as physical paralysis. (Pound, Interpretations of Legal History (1923) p. 120.) Fraudulent claims are not likely to be eliminated by application of the rule, since the slightest impact,[6] or the most attenuated of physical injuries[7] have been found sufficient to satisfy the rule's requirement. (*Battalla v. State,* 10 N.Y.2d 237 [219 N.Y.S.2d 34, 176 N.E.2d 729].) Further, the California Supreme Court has observed that "the possibility that fraudulent assertions may prompt recovery in isolated cases does not justify a wholesale rejection of the entire class of claims in which that potentiality arises." (*Dillon v. Legg,* 68 Cal.2d 728, 736 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Nor does the problem of speculative damages (given the current sophistication of the medical profession) present any greater problem in mental distress cases than it does, for example, in personal injury cases involving pain and

---

[6] Some courts have found "slight impact" contemporaneous (but having no causal connection) with the onset of emotional trauma to be sufficient to meet the "impact or injury" test. For example, see *Interstate Life & Accident Co. v. Brewer,* 56 Ga.App. 599 [193 S.E. 458], wherein defendant merely tossed coins harmlessly against plaintiff's body.

[7] Other jurisdictions have categorized nervous indigestion and loss of sleep as "physical injuries" which fulfill the requirements of this rule. (*Duty v. General Finance Company,* 154 Tex. 26 [273 S.W.2d 64]; see also Rest. 2d Torts, § 436A, com.)

suffering. (See *Battalla* v. *State, supra,* 10 N.Y.2d 237 [176 N.E.2d 729]; 59 Geo.L.J. 1237.) And, finally, the proximate cause problems raised by mental distress cases are really no greater than those which arise in many negligence actions involving physical injury. (See Prosser, Law of Torts (4th ed. 1971) § 54, pp. 327-328.)[8] But the fact that this causation problem has so often been used as a justification for the "impact or injury" requirement merely serves to point up the fundamental concern which underlies the reluctance of many courts to recognize a cause of action in negligence for emotional distress.

It has often been noted that proximate cause analysis is a mechanism by which courts implement public policy judgments: the wrongfulness of a defendant's conduct is balanced against the severity of a plaintiff's harm, and the court determines whether the situation is one in which society should provide judicial redress. (Cf. *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) With this function of proximate cause analysis in mind, two conclusions appear inevitable: (1) "[T]he motivation underlying denial of recovery [for emotional distress in negligence actions unaccompanied by physical impact or injury] has been one of public policy, with the courts continuing to express fears that unlimited and undeserved liability will result from the extension of independent protection to mental equilibrium," (59 Geo.L.J. 1237, 1244-1245) and (2) the justifications advanced for use of the "impact or injury" requirement focus upon the problem of adequate proof: underlying each of the justifications is the assumption that no guarantee of genuineness may be had in negligence actions for mental distress. (*Battalla* v. *State, supra,* 10 N.Y.2d 237 [176 N.E.2d 729]; *Ferrara* v. *Galluchio,* 5 N.Y.2d 16 [176 N.Y.S.2d 996, 152 N.E.2d 249, 71 A.L.R.2d 331]; 2 Harper & James, The Law of Torts (1956) § 18.4, pp. 1036-1038.) Thus, the use of the "impact or injury" requirement has been a response to public policy concerns raised by the problems of proof inherent in mental distress cases. From the preceding discussion, it necessarily follows that the only valid objection against recovery for mental distress is the danger of fraudulent claims. This problem should be confronted and resolved by rules of proof rather than by imposition of limits on the negligence action itself. (See Prosser, Law of Torts (4th ed. 1971) § 54, p. 328.)[9]

---

[8]It should be noted that a number of states specifically have rejected the "impact or injury" rule and have permitted recovery for negligently inflicted emotional distress. (*Rodriques* v. *State,* 52 Hawaii 156 [472 P.2d 509]; *Battalla* v. *State, supra,* 10 N.Y.2d 237 [176 N.E.2d 729]; see also 59 Geo.L.J. 1237.)

[9]Only one branch of the "impact or injury" standard is applicable in the present case. Since the circumstances of defendant's negligence preclude the possibility of impact, it

California courts have attempted to resolve the public policy problems inherent in mental distress cases in a variety of ways.

Several recent decisions have adhered to a strict "impact or injury" standard. In both *Gautier* v. *General Telephone Co.,* 234 Cal.App.2d 302 [44 Cal.Rptr. 404] and *Espinosa* v. *Beverly Hospital,* 114 Cal.App.2d 232 [249 P.2d 843], it was held that negligently caused emotional distress is not compensable unless accompanied by physical injury. In a third opinion, *Vanoni* v. *Western Airlines,* 247 Cal.App.2d 793 [56 Cal.Rptr. 115], the court appeared to endorse the physical injury portion of the common law requirement, but noted that California was not an "impact jurisdiction." However, the *Vanoni* court circumvented the common law requirement by expanding the definition of "physical injury" to include "shocks to the nervous system."

While the holdings of the foregoing cases might lead one to conclude that the "impact or injury" rule has vitality in this state, a review of California Supreme Court decisions of the past several years militates against such a conclusion.

Since 1952 the high court has evidenced a desire to abandon the "impact or injury" barrier in cases involving the intentional infliction of emotional distress. In *State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330 [240 P.2d 282], the court recognized that (1) the fear of fraudulent claims was not sufficient justification to impose an "impact or injury" barrier to all mental distress claims ("The jury is ordinarily in a better position . . . to determine whether outrageous conduct results in mental distress than whether that distress in turn results in physical injury."); and (2) administrative difficulties cannot justify denial of relief for serious invasions of emotional tranquility. (P. 338.)

In *Acadia, California, Ltd.* v. *Herbert,* 54 Cal.2d 328 [5 Cal.Rptr. 686, 353 P.2d 294], the court held that when a plaintiff suffers emotional upset as a result of an invasion of his property interests (a trespass or nuisance), he is entitled to recover damages for mental distress, regardless of whether physical injury has been sustained. Later, the court again expressed a certain dissatisfaction with the "impact or injury" rule, when it held that mental shock may be a disturbance of the nervous system which must be classified as physical injury. (*Di Mare* v. *Cresci,* 58 Cal.2d 292, 300 [23 Cal.Rptr. 772, 373 P.2d 860].)

would be nonsensical to impose such a requirement herein. Thus, for the purposes of the following discussion, it is assumed that defendant maintains that emotional harm, which does not induce physical injuries, is not recoverable in an action for negligence.

In 1967, in *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, the court expressly rejected strict application of the common law "impact or injury" requirement and suggested a new standard when it stated: "[I]t is settled in this state that mental suffering [including nervousness, grief, anxiety and worry] constitutes an aggravation of damages when it naturally ensues from the act complained of" and that "[s]uch awards are not confined to cases when the mental suffering award was in addition to an award for personal injuries," but may be recovered in cases where tortious conduct constituted an interference with property interests alone. In so holding, the court reasoned that where an actionable claim has resulted in substantial damages, apart from emotional distress, the danger of fictitious claims is greatly reduced: "other damages," be they to the plaintiff's person or to his property, provide the court with a sufficient guarantee of genuineness of the claim to accord redress for the emotional injury. (P. 433.)[10]

The *substantial damage* requirement set forth by the *Crisci* court is, however, somewhat difficult of precise definition. The court suggested that such damages constituted "actionable claims," as well as "substantial invasions of protected property interests." Does this language mean that substantial damage must be adjudicated compensable before damages for emotional distress may be recovered? ▮ We think not.

In articulating the *substantial damage* standard, the court was attempting to resolve the fundamental jurisprudential conflict engendered by the "impact or injury" rule. To ascertain the genuineness of a claim the court decided to look to the facts of the case to determine whether plaintiff had suffered an empirically verifiable injury: a detriment whose impact was readily observable and identifiable; an injury which could not be as easily fabricated as mental distress, since proof of it could, and should, be drawn from sources other than the plaintiff's own mouth. Thus, if a complaint indicates (for example) that a plaintiff was deprived of the use of his real property or his financial resources; or suffered physical injury; or was deprived of the possession of a piece of personalty, he may reasonably have been said to have suffered substantial damages. Sufferance of injuries such as these permit the reasonable inference that plaintiff's claim of mental distress is genuine.

---

[10]In *Crisci,* plaintiff suffered $91,000 in financial injury (presumably, in part, the property interest interfered with was the right to use these funds) when defendant-insurer failed to accept a reasonable settlement offer from an injured third party and exposed plaintiff to liability well beyond the limits of her insurance policy. The court found this substantial injury justified an accompanying award of $25,000 for emotional distress.

Thus, *substantial damage* need not be compensable (since imposition of a requirement of compensability would add little to the guarantee of genuineness); interference with one's legally protected interests is sufficient damage to satisfy the test set forth in *Crisci,* and to guard against potentially fraudulent emotional distress claims.

While *Crisci* was a tort action for breach of the implied covenant of good faith in an insurance contract, the court made no attempt to limit its comments on the "impact or injury" standard to that particular cause of action. Rather, the court addressed the problem of fraudulent claims by looking for the sufferance of some substantial damage (in lieu of physical impact or injury) which might impart authenticity to plaintiff's mental distress claim; the defendant's behavior, be it negligent or intentional, is of no consequence in applying this standard; and no perceivable reason exists why the substantial damage rule should not apply to the negligence action before us.

We conclude that the "impact or injury" rule is no longer strictly applied in California, and that courts may adjudicate negligence claims for mental distress when sufficient guarantees of genuineness are found in the facts of the case—e.g., when the plaintiff has suffered *substantial damage* apart from the alleged emotional injury.[11]

In two recent decisions, the Supreme Court has evidenced both a desire to adhere to the rule set forth in *Crisci* and a further disavowal of the "impact or injury" standard.

In *Gruenberg* v. *Aetna Ins. Co.,* 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032], in upholding an emotional distress damage award, the court reaffirmed the *Crisci* rule and concluded that mental distress damages were properly awarded when they resulted from tortious conduct which resulted in a substantial invasion of property interests of the plaintiff.

In *Dillon* v. *Legg, supra,* 68 Cal.2d 728, the court again stated that it has consistently rejected rules of law which would deny recovery of legitimate claims because fraudulent ones might be urged in similar contexts; it noted that juries were perfectly capable of assessing and

---

[11]We note that the Supreme Court has yet to permit recovery for negligently inflicted emotional distress where the mental injury was the only damage caused by the defendant's wrongful conduct. Though endorsement of such an action seems to be the logical end product of the decisional trends in this area, we set forth no such rule in this case. As discussed, *infra,* the instant case involves substantial financial injury and thus resolution of this case may be had based upon the specific standard articulated in *Crisci.*

weighing medical and psychiatric testimony regarding emotional injuries for the purposes of both measuring damages and rejecting fraudulent claims; in actions for the negligent infliction of emotional distress, the courts could utilize the foreseeability standard of proximate cause analysis to limit the number of plaintiffs to whom a negligent defendant could conceivably be held liable: "Defendant owes a duty, in the sense of a potential liability for damages, only with respect to those risks or hazards whose likelihood made the conduct . . . negligent in the first instance." (P. 739.)

Thus, the *Dillon* court utilized traditional negligence analysis in placing reasonable limits on defendants' liability for negligent acts which result in mental distress.

Applying the aforestated standard, we have concluded that Transamerica's negligent act—its failure to list the Perez Deed on plaintiffs' preliminary title report—substantially damaged plaintiffs' financial and property interests in the amount of $7,270 ($170 for loss of use and $7,100 in attorney's fees). Such damages provide sufficient guarantees of the genuineness of plaintiffs' emotional distress claim to satisfy the *Crisci* standard. Having determined that plaintiffs' cause of action is not deficient for its failure to meet the common law "impact or injury" test, we next must measure plaintiffs' case against traditional negligence analysis to insure that a cause of action in negligence was adequately set forth.[12]

Actionable negligence involves three elements: (1) a legal duty to use due care; (2) breach of that duty; and (3) the breach as proximate (legal) cause of the resulting injury. (4 Witkin, Summary of Cal. Law (8th ed. 1974) § 488, p. 2749.)

When a title insurer presents a buyer with both a preliminary title report and a policy of title insurance, two distinct responsibilities are assumed. In rendering the first service, the insurer serves as an abstractor of title—and must list *all* matters of public record regarding the subject property in its preliminary report. (*Hardy* v. *Admiral Oil Co.,* 56 Cal.2d 836, 841 [16 Cal.Rptr. 894, 366 P.2d 310]; 2 Miller & Starr, Current Law of Cal. Real Estate (1968) § 226, pp. 284-285.) The duty imposed

---

[12]This court previously applied the *Crisci* substantial damage test in *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 401-402 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].

upon an abstractor of title is a rigorous one: "An abstractor of title is hired because of his professional skill, and when searching the public records on behalf of a client he must use the degree of care commensurate with that professional skill. . . . the abstractor must report all matters which could affect his client's interests and which are readily discoverable from those public records ordinarily examined when a reasonably diligent title search is made." (*Contini* v. *Western Title Ins. Co.,* 40 Cal.App.3d 536, 545-546 [115 Cal.Rptr. 257]; see also *Viotti* v. *Giomi,* 230 Cal.App.2d 730, 739 [41 Cal.Rptr. 345]; *Hawkins* v. *Oakland Title Ins. & Guar. Co.,* 165 Cal.App.2d 116, 126 [331 P.2d 742].) ■ Similarly, a title insurer is liable for his negligent failure to list recorded encumbrances in preliminary title reports. (*Banville* v. *Schmidt,* 37 Cal.App.3d 92 [112 Cal.Rptr. 126]; *Moe* v. *Transamerica Title Ins. Co.,* 21 Cal.App.3d 289 [98 Cal.Rptr. 547]; *Northwestern Title Security Co.* v. *Flack,* 6 Cal.App.3d 134 [85 Cal.Rptr. 693]; *J. H. Trisdale, Inc.* v. *Shasta etc. Title Co.,* 146 Cal.App.2d 831 [304 P.2d 832].)

■ It is undisputed that Transamerica breached its duty. The Perez Deed was a recorded instrument; Transamerica had actual knowledge of it at the time the preliminary title report was issued. Transamerica was duty-bound to report all matters which could affect plaintiffs' interest in the subject property. Defendant failed to list an encumbrance of record and, in doing so, breached its duty to plaintiffs.

■ Turning to the causation issue, a defendant's conduct is the proximate legal cause of a plaintiff's injury if it is a substantial factor in bringing about the harm suffered (*Banville* v. *Schmidt, supra,* 37 Cal.App.3d 92, 107; Rest. 2d Torts, § 431); but the proximate cause attributed to defendant's act *need not* be the sole cause of the harm. (Prosser, *Proximate Cause in California,* 38 Cal.L.Rev. 369, 379-380.) But for Transamerica's failure to report the Perez Deed, plaintiffs would not have suffered distress when they learned of its existence. It was entirely foreseeable that plaintiffs would suffer mental anguish and distress when they were apprised of defendant's negligence since they relied on the preliminary report before purchasing the property.

When a title insurer breaches its duty to abstract title accurately, it is liable, in tort, for all the damages proximately caused by said breach. (Civ. Code, § 3333.) Since the "impact or injury" requirement presents no bar to plaintiffs' complaint—and the elements of an action for negligence have successfully been set forth—the trial court acted with

propriety in determining that a cause of action for negligently inflicted emotional distress was pleaded and proved.[13]

## BAD FAITH

Transamerica next contends that plaintiffs' supplemental complaint failed to state a cause of action for breach of the title insurance policy's implied covenant of good faith and fair dealing, and argues that the trial court erred in denying its motion for judgment on the pleadings. Defendant maintains that it withheld none of the policy's benefits from plaintiffs; it had no duty to quiet title with regard to the Perez Deed and it fulfilled its policy obligations regarding the Hill Reserved Easement when it obtained a quitclaim deed during the course of the trial.

■ Every contract contains an implied-in-law covenant of good faith and fair dealing; this covenant provides that neither party will interfere with the rights of the other to receive the benefits of the agreement. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 574; *Comunale* v. *Traders & General Ins. Co.,* 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883].) Breach of the covenant provides the injured party with a tort action for "bad faith," notwithstanding that the acts complained of may also constitute a breach of contract. (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, 430; *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, 401.) The cause of action is applicable to all insurance contracts, including policies of title insurance. (*Kapelus* v. *United Title Guaranty Co.,* 15 Cal.App.3d 648, 653 [93 Cal.Rptr. 278].)

■ Since a primary consideration in purchasing insurance is the peace of mind and security it will provide when the contingency insured against arises (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, 434), an insured may recover for any emotional distress suffered as a result of an insurer's bad faith, as well as any other detriment proximately resulting from the breach. (*Silberg* v. *California Life Ins. Co.,* 11 Cal.3d 452, 460-461 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 580, *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 660.)[14]

---

[13]Plaintiffs might also have stated an action herein for negligent misrepresentation. (See *Hawkins* v. *Oakland Title Ins. & Guar. Co., supra,* 165 Cal.App.2d 116, 126; *Williams* v. *Polgar,* 391 Mich. 6 [215 N.W.2d 149]; cf. *Hale* v. *George A. Hormel & Co., ante,* p. 73 [121 Cal.Rptr. 144].)

[14]To recover for mental distress injuries an insured need not show that defendant's conduct was outrageous or otherwise intentional; mere indefensible unfair treatment is enough to justify recovery. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 580.)

The gravamen of the supplemental complaint is that defendant failed to take affirmative action to remove the clouds cast upon plaintiffs' title by the Perez Deed and Hill Reserved Easement. We conclude that Transamerica's refusals to attempt to remove these encumbrances were acts of bad faith which breached the policy's implied covenant of good faith and fair dealing.

In determining what benefits or duties an insurer owes his insured pursuant to a contract of title insurance, the court may not look to the words of the policy alone, but must also consider the reasonable expectations of the public and the insured as to the type of service which the insurance entity holds itself out as ready to offer. (*Barrera* v. *State Farm Mut. Automobile Ins. Co.,* 71 Cal.2d 659, 669 [79 Cal.Rptr. 106, 456 P.2d 674].) Stated in another fashion, the provisions of the policy " '*must be construed so as to give the insured the protection which he reasonably had a right to expect, . . .*' " (Original italics.) (*Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 270, fn. 7 [54 Cal.Rptr. 104, 419 P.2d 168], quoting from *Mutual B.-L. Assn.* v. *Security T.I. & G. Co.,* 14 Cal.App.2d 225, 229 [57 P.2d 1392].). Hence, title insurance policies must be liberally construed in favor of the insured. (*J. H. Trisdale, Inc.* v. *Shasta etc. Title Co., supra,* 146 Cal.App.2d 831, 835; *Overholtzer* v. *Northern Counties Ins. Co.,* 116 Cal.App.2d 113, 122 [253 P.2d 116].) With these rules of construction in mind, we next turn our attention to the policy here in issue.

Transamerica issued plaintiffs a standard form title policy (California Land Title Assn. Standard Coverage Policy No. 4000-1963, amended 1969). Paragraph four (4) of the policy's conditions and stipulations provides, in pertinent part, as follows: "The Company, at its own cost and *without undue delay* shall provide (1) for the defense of the Insured in all litigation consisting of actions . . . commenced against the Insured . . . ; or (2) *for such action as may be appropriate to establish the title . . . as insured,* which litigation . . . is founded upon an alleged defect, lien or encumbrance insured against by this policy. . . ." (Italics added.)

This provision of the title policy sets forth two obligations of the insurer: (1) To defend the insured's title if a third party claims, in a judicial proceeding, an interest insured against by the policy, and (2) in the event that a third party claimant chooses not to litigate his claim, to take affirmative action (by filing an action to quiet title or by offering to compromise the third party's claim) to provide the insured with title as stated in the policy. The obligations to defend and to "take other

appropriate action" are kindred duties designed to achieve the same objective: the integrity of the insured's title. Since these duties address the same fundamental concern, both must be equally accessible to insureds; legal rules regarding application of the one must, likewise, apply to the other.

The case law regarding a title insurer's bifurcated obligation to seek judicial determination of insured-against title defects deals almost exclusively with the duty to defend.[15] Here, however, we have a third party claimant who did not find it necessary to sue the insureds to exercise his claimed right—he instead persuaded the city planning commission to impose restrictions on plaintiffs' development 'which would insure that he would continue to enjoy his asserted easement. Thus, in determining the bounds of Transamerica's duty to seek judicial resolution of plaintiffs' title dispute we will look to the case law regarding an insured's duty to defend.

■ In determining whether the insurer's duty to defend has matured, courts, after looking at the nature and kind of risk covered by the policy, must decide whether a *potential* of liability for indemnity under the title insurance policy is raised at the time the defense is requested. If possible liability exists, the title company is duty bound to defend the insured in a quiet title action. Failure to provide a defense under such circumstances gives rise to a cause of action in tort for bad faith. (*Paramount Properties Co. v. Transamerica Title Ins. Co.,* 1 Cal.3d 562, 571 [83 Cal.Rptr. 394, 463 P.2d 746]; *Gray v. Zurich Insurance Co., supra,* 65 Cal.2d 263, 275-276; *Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co.,* 33 Cal.App.3d 26, 33 [108 Cal.Rptr. 737]; *Kapelus v. United Title Guaranty Co., supra,* 15 Cal.App.3d 648, 653.)[16] The rule regarding an insurer's duty to defend really can take no other form; otherwise the insured would be required to finance his own defense and then, only if he is successful, hold the insurer to its promise by means of a second suit for reimbursement. If this construction were followed, a basic reason for the purchase of insurance would be defeated: instead of having purchased insurance against the trauma and financial hardship of litigation, the insured will have found that he has

---

[15]This is not surprising, since an insured is almost always in possession of the subject property and a third party encumbrancer must seek adjudication of his claimed right if it is to be exercised at all.

[16]It should be noted that the insurer has an alternative to assuming the defense of its insured when the issue of coverage is unclear; it may file a declaratory relief action to test its duty. (*State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.,* 9 Cal.App.3d 508, 527 [88 Cal.Rptr. 246].)

purchased nothing more than a lawsuit. (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d 263, 278.)

 In applying the aforestated rules to the instant case, we must conclude that defendant breached its duty to take affirmative action to provide plaintiffs with a clear title as to both the Perez Deed and the Hill Reserved Easement.

The trial court erred in its findings of fact and conclusions of law (in the first trial) when it ruled that Transamerica owed plaintiffs no duty to quiet title in regard to the cloud created by the Perez Deed.[17] The trial court reasoned that since the Perez Deed was void *ab initio,* and not covered by the indemnity provisions of the policy, Transamerica's duty to quiet title on plaintiffs' behalf in regard to the Perez Easement never matured. But this reasoning erroneously assesses defendant's duty retrospectively.

It is the rule that "[t]he duty to defend [the obverse of defendant's duty in the present case] . . . does not turn upon the ultimate adjudication of coverage but upon facts known to the insurer at the inception of the third party's suit against its insured." (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co., supra,* 9 Cal.App.3d 508, 526; see also *Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co., supra,* 33 Cal.App.3d 26, 33.)[18] Application of a contrary rule would emasculate an insurance policy's duty to defend provision: since the question of indemnity coverage is not resolved until a lawsuit has run its course, use of any

---

[17]Pursuant to section 906 of the Code of Civil Procedure, an appellate court has the power to review matters raised by the respondent and material to the resolution of the appeal, in spite of the fact that the responding party has not appealed from the judgment. Herein plaintiffs have requested that we review the trial court's determination that defendant had no duty to quiet title regarding the Perez Deed, and our discussion and review of that finding is set forth above.

[18]It is an oversimplification to assert that the duties to defend and to quiet title are precisely equivalent. The duty to defend arises only after a third party claimant has filed an action against the insured; in such circumstances it is plain that the insured's title is subject to a real cloud. However, the kindred duty to quiet title does not, and should not, arise in every situation in which the insured requests his insurer to act: there must be present in the facts and circumstances of the case some indicia that the encumbrance with which the policy holder is concerned is a genuine cloud upon his title. (Note, however, that should the insurer decide that the alleged cloud is illusory, it must bear the risk of its decision, and may, subsequently, be found to have acted in bad faith. (*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 660.)

In the present case such indicia were present: The Perez claim was recognized by the city planning commission (to the extent that they imposed certain restrictions on plaintiffs' development); hence, Perez' claim, in fact, encumbered plaintiffs' property and constituted an actual cloud on their title.

other rule fixing the duty to defend would transform that duty into nothing more than a promise to reimburse an insured for attorney's fees incurred. Such a construction would comport neither with the public's nor with the individual insured's reasonable expectations. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 271-272.)

By virtue of the 1960 deed, Perez claimed to have an easement right in plaintiffs' parcel. Since this easement was not exempted from policy coverage by the insurer, it constituted a cloud on the title for which the potential of indemnity liability existed at the time plaintiffs requested Transamerica to act. When plaintiffs requested that defendant remove the cloud created by the Perez Deed, they reasonably expected that Transamerica would honor their request by filing a quiet title action, pursuant to the obligation the company had assumed under paragraph four (4) of the policy's conditions and stipulations. When Transamerica refused it acted in bad faith and breached the policy's implied covenant of good faith and fair dealing.

In the course of determining whether Transamerica acted in bad faith in failing to take affirmative action in regard to the Hill Easement, two questions are raised: (1) Did plaintiffs give defendant sufficient notice of the existence of that encumbrance to give rise to a duty to quiet title; and (2) did plaintiffs suffer substantial enough injury as a result of the breach to justify an emotional distress award?

 A duty to defend (or quiet title) arises when the insurer is notified of the existence of a defect. (*Overholtzer* v. *Northern Counties Ins. Co., supra,* 116 Cal.App.2d 113, 123.) And the duty to defend is fixed by the facts which the insurer learns, not only from the insured, but from the complaint and other sources as well. (*Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co., supra,* 33 Cal.App.3d 26, 33; *Stearns* v. *Title Ins. & Trust Co.,* 18 Cal.App.3d 162, 167 [95 Cal.Rptr. 682]; *State Farm Mut. Auto. Ins. Co.* v. *Flynt,* 17 Cal.App.3d 538, 548 [95 Cal.Rptr. 296].)

Transamerica concedes it had actual knowledge of the existence of the Hill Reserved Easement at the time it issued its preliminary title report. When plaintiffs requested that Transamerica quiet title in regard to the Perez Deed, defendant further admits that there was some confusion as to the relationship between the Perez and Hill interests and that, at one point, both were thought to be the same easement interest. When plaintiffs apprised the insurer that title to the strip of land claimed

pursuant to the Perez Deed was in dispute (since defendant knew that the Hill Reserved Easement also concerned at least a part of that same strip), Transamerica was effectively notified that the Hill Easement constituted a potential cloud on plaintiffs' title-as-insured. Hence, when Transamerica refused to take any action to remove the cloud, it breached its covenant of good faith and fair dealing.

A number of California decisions have suggested that the bad faith breach of an insurance agreement must result in "substantial damages" apart from those due to mental distress before an award for the emotional injury may be made. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 580; *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, 434; *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, 401-402.) Here, Transamerica maintains that plaintiffs did not suffer substantial damage because of the Hill Easement and, that therefore, a cause of action for bad faith infliction of emotional distress could not be stated.

But the Hill Easement was inextricably tied to the Perez Easement dispute and as such constituted a substantial cloud upon plaintiffs' property (and thus did substantial damage) until it was removed.

It appears that Hill reserved an easement interest in the plaintiffs' parcel (when initially conveyed in 1958) for the benefit of other of his parcels in the same tract (these did not include the Perez parcel). Several years after the aforementioned conveyance, Hill gave a deed to Perez which purported to convey an easement interest in the Hill Reserved Easement. When litigation commenced concerning the validity of the Perez Deed, the question of to what extent the Hill Easement still encumbered the subject property was inevitably raised. Thus, the legal fees paid by plaintiffs in prosecution of their quiet title action against Perez were, secondarily but necessarily, incurred to determine the effect of the Hill Easement upon their title. In addition, the pendency of the lawsuit constituted demands upon plaintiffs' time, energies and financial resources. These various burdens are sufficient evidence of real and substantial injury to satisfy the substantial damage standard set forth in *Crisci.* Defendant's contention that substantial damages were not incurred in regard to the Hill reservation because the injury suffered was not compensated by the trial court in the first proceeding is of no moment in light of our preceding discussion: substantial damages in this context need not be compensable. Consequently, plaintiffs were properly

awarded damages for emotional distress for Transamerica's bad faith breach of the title policy.

Transamerica claims that it neither breached the covenant of good faith, nor substantially injured plaintiffs, because during the course of the first trial (to quiet title) it obtained a quitclaim deed of the Hill Easement. ▮ This argument has no merit. Defendant consistently refused to quiet title on plaintiffs' behalf in regard to a claim admittedly covered by the policy—forcing plaintiffs to bring suit and endure the trauma and financial hardship of litigation—and then sought to avoid bad faith liability for their delay by finally delivering to the insureds the benefit of their policy. This argument lacks integrity; if such a course of conduct were endorsed, an insurer's duty to clear title would not exist in fact, but only in form.

Defendant knew of the existence of the Hill reservation, its close connection with the Perez Deed, and admitted that the Hill Easement was covered by the policy—yet still refused to assume its duty to quiet title. This court must conclude that plaintiffs' supplemental complaint adequately set forth an emotional distress claim for bad faith breach of the title insurance agreement, and that the trial court's denial of defendant's motion for judgment on the pleadings was proper.

## JURY INSTRUCTIONS

Defendant contends that the court erred in giving burden of proof and damage instructions on the negligent infliction of emotional distress theory since the requirement of accompanying physical harm was not set forth, and in refusing a proffered instruction which included this requirement. In so arguing, defendant has merely recast its argument on the sufficiency of the pleadings, and it has no more merit in this context than it had in the preceding.

Defendant also contends that the court erred in giving instructions regarding the tort of bad faith in that those instructions failed to state that the sufferance of substantial damage apart from plaintiffs' mental distress was a prerequisite to their recovery of any damages for emotional injury. (The court also refused proffered instructions which set forth a substantial damage requirement.)

▮ A judgment will not be reversed for errors in jury instructions unless it appears reasonably probable that, absent the error, the jury

would have rendered a verdict more favorable to the complaining party. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, 407.) Even assuming that the trial court erred in failing to apprise the jury of the aforestated substantial damage requirement, our preceding discussion indicates that such damage was, in fact, suffered by plaintiffs. Consequently, no possible prejudice resulted from the trial court's omission.

Transamerica contends that the trial court erred in refusing to give a number of its proffered instructions. Applicable principles regarding review of refused jury instructions include the following: While a party is entitled to have the jury instructed on his theory of the case (*Self* v. *General Motors Corp.,* 42 Cal.App.3d 1, 10 [116 Cal.Rptr. 575]), the trial judge need not use the instructions submitted by that party, but may phrase his own. (*Harris* v. *Belton,* 258 Cal.App.2d 595, 615 [65 Cal.Rptr. 808].) When reviewing the instructions given at trial the appellate court must consider all the instructions as a whole, not severally, to determine whether error was committed. (*People* v. *Rhodes,* 21 Cal.App.3d 10, 20 [98 Cal.Rptr. 249].) Particular instructions may be properly refused if covered elsewhere in the jury's charge. (*People* v. *Murphy,* 42 Cal.App.3d 81, 89 [116 Cal.Rptr. 889].)

Defendant's proffered instruction on mitigation of damages was adequately covered by other instructions given to the jury. Other requested instructions were properly refused since they were either incorrect statements of the law or irrelevant to the case. The jury was adequately instructed.

### SUFFICIENCY OF THE EVIDENCE

Defendant argues that its motion for judgment notwithstanding the verdict (Code Civ. Proc., § 629) should have been granted by the trial court since the jury's awards of $50,000 to each of the plaintiffs were not supported by substantial evidence. Transamerica contends that the primary cause of plaintiffs' mental distress was their unreasonably perceived inability to develop the property. At the first trial the court found that the property could have, in fact, been developed in spite of the problems created by defendant's negligence and bad faith. The court therefore concluded that Transamerica was not liable for damages flowing from the failure to develop, and defendant contends that the record is silent as to emotional distress experienced for any other reason. We disagree.

 Substantial evidence is relevant evidence of ponderable legal significance which is reasonable in nature, credible, and of solid value. (*United Professional Planning, Inc.* v. *Superior Court,* 9 Cal.App.3d 377, 392-393 [88 Cal.Rptr. 551].) The testimony of a single witness (even a party himself), whether he be an expert or a layman may be sufficient to satisfy the substantial evidence test. (See *Kircher* v. *Atchison, T. & S. F. Ry. Co.,* 32 Cal.2d 176, 183 [195 P.2d 427]; *Ortzman* v. *Van Der Waal,* 114 Cal.App.2d 167, 170 [249 P.2d 846, 252 P.2d 7].)

 The record is replete with evidence that much of plaintiffs' distress was attributable to causes other than the delay in the development of their property. Each of the plaintiffs testified that he had experienced emotional distress (e.g., loss of sleep, anxiety, worry, tension and nervousness) because of concern over the litigation necessitated by Transamerica's negligence and bad faith, and the attorney's fees incurred therein. Both Canavier and Jarchow testified they were distressed and frustrated over defendant's refusal to fulfill its contractual obligations. Mrs. Jarchow was upset because the title insurance policy the plaintiffs had purchased appeared to be worthless. In addition, two psychiatrists testified that each of the plaintiffs was under emotional stress which had been engendered (at least secondarily) by the traumas attendant to the bringing of the present lawsuit. This sound, solid evidence satisfies the substantial evidence rule.

### ADMISSIBILITY OF EVIDENCE

Defendant contends that much of the evidence admitted at trial on the supplemental complaint had to do with events which occurred before April 2, 1971—the date plaintiffs filed their original complaint. Apparently Transamerica argues, that since a supplemental complaint must set forth facts material to the case which occurred after the filing of the original complaint (Code Civ. Proc., § 464), the jury was entitled to hear only evidence of events which occurred after the filing of the complaint. We disagree.

The supplemental complaint herein merely set forth an additional element of damage (mental distress) which was suffered by the plaintiffs subsequent to April 2, 1971—though caused by acts of the defendant committed prior to that date.[19] Plaintiffs suffered mental distress because

---

[19]Perhaps plaintiffs' supplemental complaint might best have been designated an amended complaint (or an amendment to the complaint), though the issue is not before us on appeal. In any event, the characterization of plaintiffs' pleading is of no

of having to file the initial pleadings in this case, as a result of Transamerica's refusal to take responsibility for the litigation to quiet title to plaintiffs' property. Substantial evidence was produced during the jury phase of the trial to establish that plaintiffs' distress was a continuing injury which haunted them from the day the Perez Deed came to their attention until the court trial concluded. Thus, plaintiffs' introduction, into evidence, of acts by the defendant prior to April 2, 1971, was necessary to prove the damages set forth in the supplemental complaint. The admission of pretrial evidence regarding defendant's activities was relevant to the damages issue, and was properly admitted.

## MITIGATION OF DAMAGES

Defendant argues that plaintiffs' failure to mitigate their damages (in failing to develop the property) precludes any recovery as a matter of law.

Where damage is threatened by a tortious act, the injured party has an active duty to use reasonable care and diligence to minimize his loss: a plaintiff will not be compensated for damages which he could have avoided by reasonable effort or expense. (*Valencia* v. *Shell Oil Co.,* 23 Cal.2d 840, 844 [147 P.2d 558]; *Green* v. *Smith,* 261 Cal.App.2d 392, 396 [67 Cal.Rptr. 796].) The issue of mitigation is an issue of fact for the trial court, and it is subject only to the substantial evidence test upon review. (*Sackett* v. *Spindler,* 248 Cal.App.2d 220, 239 [56 Cal.Rptr. 435].)

The judge read his findings and conclusions rendered in the first action to the jury. These findings and conclusions advised the jury that the plaintiffs could have in fact developed their property in spite of defendant's negligence and bad faith, and that damages arising from this failure to develop were not compensable since plaintiffs could have avoided them by diligent development.

When the jury returned with its verdict, it furnished the court with answers to special interrogatories propounded by defendant. Four of these interrogatories read: "If you find that Plaintiff [name] suffered emotional distress . . . then please state whether or not all of said

---

significance whatsoever since the designation of a pleading as a supplemental complaint, which properly should have been admitted as an amendment, does *not* constitute reversible error. (*Stark* v. *Hoeft,* 205 Cal. 102, 108 [269 P. 1105]; *Macmorris Sales Corp.* v. *Kozak,* 263 Cal.App.2d 430, 439 [69 Cal.Rptr. 719].)

emotional distress so suffered was legally caused by the failure of Plaintiffs to proceed with their planned development. . . ." To each of these interrogatories the jury answered, "No." ██ The only reasonable inference which may be drawn from the jury's answers is that they concluded that plaintiffs suffered compensable emotional distress damage as a result *solely* of defendant's negligence and bad faith.

From the record it is clear that the jury was fully aware of the mitigation issue. A verdict was returned for an amount substantially less than that claimed in the complaint. It is, therefore, reasonable to infer that the jury took the issue of mitigation into account in reaching its damage award. (Cf. *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140, 142 [134 P. 1157].) Defendant has been unable to set forth facts requiring us to reach any other conclusion on this issue.

## Excessive Damages

██ Where a jury award is so grossly disproportionate as to raise a presumption of passion or prejudice an appellate court is duty-bound to modify the award. (*Bertero* v. *National General Corp.*, 13 Cal.3d 43, 64 [118 Cal.Rptr. 184, 529 P.2d 608]; *Cunningham* v. *Simpson*, 1 Cal.3d 301, 308 [81 Cal.Rptr. 855, 461 P.2d 39].) However, in searching the record for evidence of passion or prejudice, the reviewing court must be mindful that the trial court's determination should be accorded great weight. (*Bertero* v. *National General Corp., supra*, 13 Cal.3d 43, 64.)

Transamerica argues that since the amount awarded plaintiffs for their property and financial injuries ($170 and $7,100) was small relative to the amount awarded for emotional distress, the latter award was excessive. However, in light of the tortious acts committed by Transamerica (notably the repeated acts of bad faith), it is likely that the greatest portion of plaintiffs' injuries would take the form of emotional distress (e.g., vexation, tension, frustration, and worry). As this court has previously noted, "there is no fixed or absolute standard by which to compute the monetary value of emotional distress." (*Fletcher* v. *Western National Life Ins. Co., supra*, 10 Cal.App.3d 376, 409.) Plaintiffs were required to suffer through years of litigation and frustration because of defendant's tortious acts. ██ An award of $50,000 per plaintiff for over three years of anxiety and mental discomfort does not strike this court as being excessive nor motivated by passion or prejudice.

Finally, plaintiffs contend that they are entitled to attorney's fees on appeal. Contrary to their contention, the subject title insurance policy *does not* contain an attorney's fees provision for the benefit of the insurer, and, therefore cannot contain a reciprocal provision for the insureds' benefit. Consequently, plaintiffs are not entitled to an award of fees on appeal.

The judgment is affirmed.

Gardner, P. J., and Tamura, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 30, 1975.