This is an appeal by Oliver D. and Mary Childs from a judgment dismissing their action, without prejudice, upon grant of Mississippi Valley's Rule 12 (b)(6), ARCP, motion to dismiss.
The sole issue presented by this appeal is whether the complaint states a claim upon which relief can be granted. If under a provable set of facts upon a cognizable theory of law it does, then it should not have been dismissed. Jeannie'sGrocery v. Baldwin County Electric Membership Corp.,331 So.2d 665 (Ala. 1976).
The Childses claim their complaint states a claim on the theory of the tort of "outrage," *Page 1147 
which has neither been accepted nor rejected in Alabama. Stated otherwise the issue is: whether Alabama should allow recovery of punitive and consequential damages and damages for mental pain and anguish in an insured's suit against his insurer predicated upon the insurer's bad faith misconduct.
It is necessary to set that complaint out here for a understanding of the case:
 "FIRST CAUSE OF ACTION
"1. The plaintiffs in this case, Oliver D. Childs and Mary Childs, are bona fide resident citizens of Mobile County, Alabama. The defendant, Mississippi Valley Title Insurance Company, a corporation, is a foreign corporation with its principal place of business located in Jackson, Mississippi.
"2. Plaintiffs aver that heretofore on to-wit: the 5th of November, 1970, plaintiffs purchased real property situated in Mobile County, Alabama from Wilma B. Jones, a widow. The property described therein was conveyed by said grantor to plaintiffs by vendors lien deed. A copy of that instrument is attached hereto marked as Exhibit `A' and made a part hereof by reference thereto as if fully herein set out.
"On to-wit: the 9th day of November, 1970, the defendant issued a real estate title insurance policy to the plaintiffs. Under the terms of said insurance policy the defendant insured the plaintiffs against adverse claims to title, defects in or liens or encumbrances on the title to the estate or interest covered in the land described in the policy. A copy of the policy is attached hereto marked as Exhibit `B' and made a part hereof by reference thereto as if fully herein set out.
"On to-wit: the 9th day of October, 1975, plaintiffs conveyed the property purchased from Wilma B. Jones, a widow, and insured by defendant, to plaintiffs daughter-in-law, Charlotte Childs. That conveyance was made by a full warranty deed. A copy of that instrument is attached hereto marked Exhibit `C' and made a part hereof by reference thereto as if fully herein set out. Subsequent to plaintiffs said grantee taking title to said property, plaintiffs grantee attempted to obtain a title insurance policy on the property which had been conveyed to her by plaintiffs. In response to that request Title Guaranty and Abstract Company of Mobile issued a title binder on the property purchased by plaintiffs grantee. Said title insurance company advised plaintiffs grantee in said title binder in substance that plaintiffs had failed to convey said property to her free and clear of any defects in title due to the fact that one Steve R. Jones and Cynthia Jones, a son and daughter-in-law of the plaintiffs grantor, Wilma B. Jones had obtained a warranty deed to the same property by an instrument dated, June 7, 1973. A copy of said title binder is attached hereto marked Exhibit `D' and made a part hereof by reference thereto as if fully herein set out. In said title binder said title insurance company required that a quitclaim deed be obtained from Steve R. Jones and Cynthia Jones conveying the interest they obtained in the warranty deed executed to them on June 7, 1973. Plaintiffs, upon request of their grantee, then contacted Steve R. Jones and requested a quitclaim deed as required in said title binder. There is a deed of record executed in 1969, wherein Cynthia Jones and Steve Jones, husband and wife, joined in a conveyance with all other children and their spouses of Wilma B. Jones conveying to Wilma B. Jones all of their interest in the subject property which they had inherited from their deceased father, Bradley W. Jones. When plaintiffs contacted Steve R. Jones to request a quitclaim deed to remove the cloud on and defect in their warranted title which had been created by the recording of the deed dated June 7, 1973, the said Steve Jones refused to execute a deed of any kind and also advised plaintiffs for the first time that the 1969 deed with his signature thereon purportedly conveying his inherited interest in the property to his mother was invalid in that the signature purporting to be his was forged and that he made a claim against the subject property claiming that he owned an undivided interest in the property at the time his mother, *Page 1148 
Wilma B. Jones, conveyed the property to plaintiffs. Upon plaintiffs advising their grantee of the claim of forgery, plaintiffs grantee then called upon plaintiffs to remove or eliminate the adverse claim to title and to remove and eliminate the defect in and cloud on the title which title plaintiffs had warranted to be free of defects. Plaintiffs then verbally contacted said title insurance company, the authorized agent of defendant, in to-wit: December, 1976, and advised defendant of the adverse claim made by said Steve R. Jones wherein he claimed an ownership interest on the property insured by defendant which ownership interest was claimed to have existed on the date the property was conveyed by Wilma B. Jones to plaintiffs and on the date that defendant insured the title to plaintiffs. The defendant failed or refused to take any affirmative action of any kind to clear plaintiffs' title of the cloud thereon and defect therein brought about by the adverse claim to title made by Steve R. Jones. Plaintiffs then hired an attorney to communicate with Title Guaranty and Abstract Company of Mobile, the agent of the defendant, in an effort to obtain from defendant the performance which was due and owing to plaintiffs under the terms of the title insurance policy attached hereto. By letter dated March 14, 1977, plaintiffs' attorney communicated for the first time with Title Guaranty and Abstract Company of Mobile and in said communication made demand upon the defendant to undertake the defense of plaintiffs' insured title and to do whatever may be necessary to remove the cloud created on and the defect in plaintiffs' title as a result of the claim of forgery and adverse claim to title made by Steve R. Jones. A copy of that letter is attached hereto marked Exhibit `E' and made a part hereof by reference thereto as if fully herein set out. Thereafter, plaintiffs' attorney again communicated with Title Guaranty and Abstract Company of Mobile by letter dated April 12, 1977, and for the second time, made demand upon the defendant to either pay the person who claimed to own an interest in the property at the time plaintiffs purchased the same and at the time defendant insured the same, or in the alternative, to initiate whatever legal action may be necessary to cure the cloud on and defect in plaintiffs' insured title as a result of the adverse claim to title made by Steve Jones. A copy of that letter is attached hereto marked Exhibit `F' and made a part hereof by reference thereto as if fully herein set out. Thereafter, on July 15, 1977, plaintiffs' attorney again communicated with Title Guaranty and Abstract Company of Mobile, and, for the third time, made demand in writing upon the defendant to either pay the person who claimed to own an interest in the insured title at the time the property was conveyed to plaintiffs and at the time defendant insured the same, or in the alternative, to forthwith initiate whatever legal action may be necessary to remove the cloud on and defect in plaintiffs' insured title resulting from the adverse claim to title made by Steve Jones. A copy of that letter is attached hereto marked Exhibit `G' and made a part hereof by reference thereto as if fully herein set out. The defendant failed and refused to take any affirmative action in response to the verbal and written demands of plaintiffs. On the 26th day of August, 1977, plaintiffs went to the office of Title Guaranty and Abstract Company of Mobile and inquired of the authorized agent of the defendant company what action, if any, the defendant had undertaken or intended to undertake to remove the cloud on and cure the defect in plaintiffs' insured title resulting from the adverse claim to title made by Steve Jones, and defendant's authorized agent verbally advised plaintiffs that Steve R. Jones had failed to respond to defendant's efforts to communicate with him and that the defendant had done all it intended to do and had no intentions of making any further effort to cure the defect in and remove the cloud on plaintiffs' insured title created by the claim of forgery and adverse claim to title made by the said Steve R. Jones and said agent further verbally advised plaintiffs at that time that if plaintiffs wished to determine the validity or invalidity of the adverse claim to title made by Steve R. Jones that plaintiffs could file *Page 1149 
their own lawsuit and pay their own legal expenses.
"3. Plaintiffs aver that although the said title insurance policy was in full force and effect and that although notice was given to the defendant that a claim of title or interest adverse to plaintiff's title, as insured by defendant, was made by Steve R. Jones and although repeated demands were made for defendant to defend plaintiffs' insured title or take affirmative action to cure and remove the defect or cloud resulting from the claim of forgery and adverse claim to title made by Steve R. Jones, the defendant nevertheless repeatedly failed and refused to take any affirmative action or perform its obligations due under the terms of said policy of title insurance and the defendant refused to honor the plaintiffs' valid claim or demand. Plaintiffs aver that the defendant breached its implied in law covenant of good faith and fair dealing made in its policy of title insurance.
"4. Plaintiffs aver that as a result of the adverse claim to their insured title they have incurred liability to their grantee for the breach of the warranty of title made by them in their deed to their grantee. Plaintiffs further aver that the conduct of the defendant company in failing and refusing in bad faith to honor plaintiffs' valid claim and demand and in failing and refusing to perform its obligations due under the terms of its title insurance policy has caused in the past and continues to cause the plaintiffs to suffer extreme mental pain and anguish for which plaintiffs claim damages. Plaintiffs also demand punitive damages be assessed against the defendant for its unfounded refusal to perform its contract obligations, for its breach of its implied covenant of good faith and fair dealings and for its bad faith in refusing to honor its contract obligations which were due to plaintiffs under the terms of plaintiffs' title insurance policy which was issued by defendant.
"WHEREFORE plaintiffs demand judgment against the defendant in the sum of FIVE HUNDRED THOUSAND AND NO/100 ($500,000.00) DOLLARS plus cost."
The exact terms of the pertinent provisions of the policy insuring the plaintiffs are:
"Mississippi Valley Title Insurance Company, herein called the Company, for a valuable consideration, hereby insures the party named in Schedule A, hereinafter called the Insured, the heirs, devisees, personal representatives of such Insured, or if a corporation, its successors by dissolution, merger or consolidation, against loss or damage not exceeding the amount stated in Schedule A, together with costs, attorneys' fees and expenses which the Company may become obligated to pay as provided in the Conditions and Stipulations hereof, which the Insured shall sustain by reason of:
"1. any defect in or lien or encumbrance on the title to the estate or interest covered hereby in the land described or referred to in Schedule A, existing at the date hereof, not shown or referred to in Schedule B or excluded from coverage in Schedule B or in the Conditions and Stipulations; or
"2. lack of a right of access to and from the land;
all subject, however, to the Conditions and Stipulations hereto annexed, which Conditions and Stipulations, together with Schedules A and B, are hereby made a part of this policy; all as of the effective date of this policy.
"IN WITNESS WHEREOF, the said Mississippi Valley Title Insurance Company has caused its corporate name and seal to be hereunto affixed by its duly authorized officers as of the date shown in Schedule A, the policy to be valid when countersigned by an authorized officer or agent of the Company.
* * * * * *
"2. Exclusion from the Coverage of this Policy
"This policy does not insure against loss or damage by reason of the following:
"(a) The refusal of any person to purchase, lease or lend money on the estate or interest covered hereby in the land described in Schedule A. *Page 1150 
"(b) Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulation or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions, or location of any improvements now or hereafter erected on said land, or prohibiting a separation in ownership or a reduction in the dimensions or area of any lot or parcel of land.
"(c) Governmental rights of police power or eminent domain unless notice of the exercise of such rights appears in the public records at the date hereof.
"(d) Title to any property beyond the lines of the land expressly described or referred to in Schedule A, or title to areas within or rights or easements in any abutting streets, roads, avenues, lanes, ways or waterways (except to the extent the right of access to and from said land is covered by the insuring provisions of this policy), or the right to maintain therein vaults, tunnels, ramps or any other structure or improvement, unless this policy specifically provides that such titles, rights or easements are insured.
"(e) Defects, liens encumbrances, adverse claims against the title as insured or other matters (1) created, suffered, assumed or agreed to by the Insured; or (2) known to the Insured either at the date of this policy or at the date such Insured acquired an estate or interest insured by this policy and not shown by the public records, unless disclosure thereof in writing by the Insured shall have been made to the Company prior to the date of this policy; or (3) resulting in no loss to the Insured; or (4) attaching or created subsequent to the date hereof.
"(f) Loss or damage which would not have been sustained if the Insured were a purchaser for value without knowledge.
"3. Defense and Prosecution of Actions — Notice of Claim to be Given by the Insured.
"(a) The Company, at its own cost and without undue delay, shall provide for the defense of the Insured in all litigation consisting of actions or proceedings commenced against the Insured, which litigation is founded upon defect, lien or encumbrance insured against by this policy, and may pursue such litigation to final determination in the court of last resort.
"(b) In case any such action or proceeding shall be begun, or defense interposed, or in case knowledge shall come to the Insured of any claim of title or interest which is adverse to the title as insured, or which might cause loss or damage for which the Company shall or may be liable by virtue of this policy, the Insured shall notify the Company thereof in writing. If such notice shall not be given to the Company within ten days of the receipt of process or pleadings, or if the Insured shall, not, in writing, promptly notify the Company of any defect, lien or encumbrance insured against which shall come to the knowledge of the Insured, then all liability of the Company in regard to the subject matter of such action, proceeding or matter shall cease and terminate; provided, however, that failure to notify shall in no case prejudice the claim of any Insured unless the Company shall be actually prejudiced by such failure and then only to the extent of such prejudice.
"(c) The Company shall have the right at its own cost to institute and prosecute any action or proceeding or do any other act which in its opinion may be necessary or desirable to establish the title as insured; and the Company may take any appropriate action under the terms of this policy whether or not it shall be liable thereunder and shall not thereby concede liability or waive any provision of this policy.
"(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the Insured shall secure to it the right to so prosecute or provide defense in such action or proceeding, and all appeals therein, and permit it to use, at its option, the name of the Insured for such purpose. Whenever requested by the Company the Insured shall give the Company all reasonable aid in any such action or proceeding, in effecting settlement, securing evidence, obtaining witnesses, or prosecuting or *Page 1151 
defending such action or proceeding, and the Company shall reimburse the Insured for any expense so incurred.
"4. Notice of Loss — Limitation of Action
"In addition to the notices required under paragraph 3 (b), a statement in writing of any loss or damage for which it is claimed the Company is liable under this policy shall be furnished to the Company within sixty days after such loss or damage shall have been determined and no right of action shall accrue to the Insured under this policy until thirty days after such statement shall have been furnished, and no recovery shall be had by the Insured under this policy unless action shall be commenced thereon within five years after expiration of said thirty day period. Failure to furnish such statement of loss or damage, or to commence such action within the time hereinbefore specified, shall be a conclusive bar against maintenance by the Insured of any action under this policy.
"5. Option to Pay, Settle or Compromise Claims
"The Company shall have the option to pay or settle or compromise for or in the name of the Insured any claim insured against or to pay the full amount of this policy and such payment or tender of payment, together with all costs, attorneys' fees and expenses which the Company is obligated hereunder to pay, shall terminate all liability of the Company hereunder.
"6. Payment of Loss
"(a) The liability of the Company under this policy shall in no case exceed, in all, the actual loss of the Insured and costs and attorneys' fees which the Company may be obligated hereunder to pay.
"(b) The Company will pay, in addition to any loss insured against by this policy, all costs imposed upon the Insured in litigation carried on by the Company for the Insured, and all costs and attorneys' fees in litigation carried on by the Insured with the written authorization of the Company.
"(c) No claim for damage shall arise or be maintainable under this policy (1) if the Company, after having received notice of an alleged defect, lien or encumbrance not excepted or excluded herein removes such defect, lien or encumbrance within a reasonable time after receipt of such notice; or (2) for liability voluntarily assumed by the Insured in settling any claim or suit without written consent of the Company.
"(d) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto and no payment shall be made without producing this policy for endorsement of such payment unless the policy be lost or destroyed, in which case proof of such loss or destruction shall be furnished to the satisfaction of the Company.
"(e) When liability has been definitely fixed in accordance with the conditions of this policy the loss or damage shall be payable within thirty days thereafter."
The extent of coverage under the policy is $3,000.
Code 1940, as amended, Tit. 28A. § 94 (§ 27-5-10), (Code 1975), reads:
 "§ 94. `Title insurance' defined. — Title insurance is insurance of owners of property or others having an interest therein, or liens or encumbrances thereon, against loss by encumbrance, or defective titles, or invalidity, or adverse claim to title." (emphasis added)
The premises upon which the Childses conclude their complaint states a cause of action in tort entitling them to recover damages for mental pain and anguish as well as punitive damages are: 1. The policy insured them against adverse claims to their title. 2. They have breached their warranty to their grantee because at the time of conveyance by them there was a recorded conveyance of title to others by their grantor which was not of record when they obtained title. 3. They have notified their insurer of this defect in or cloud upon their title. 4. Defendant, insurer, although having a duty to do so, has in bad faith failed to take affirmative action to cause the defect in or cloud upon their title to be removed. *Page 1152 
Mississippi Valley counters with the argument that no right of action in tort against a title insurance company is recognized in Alabama for its failure to take affirmative action to clear the title to land against an adverse claim where no interest in the land is owned by the insured; there has been no ouster of either the insured or subsequent holders of title claiming through the insured; there has been no litigation filed asserting an adverse claim; no loss or damage to the insured has occurred, other than mental pain and anguish (outrage) of the insureds, as a result of the title company failing in bad faith to file suit or take other affirmative action to remove the defect or cloud on title, and the terms of the policy do not require the insurer to initiate any affirmative action.
At the outset it is well to note that the Childses allege no loss or damage other than outrage and with commendable candor ask that this appeal not be decided upon a rationale that treats their complaint as stating a claim for breach of contract. We shall not.
The Childses seek our adoption of the tort of bad faith. The tort of bad faith is generally defined as follows:
 "Every contract contains an implied in law covenant of good faith and fair dealing; this covenant provides that neither party will interfere with the rights of the other to receive the benefits of the agreement. (Gruenberg v. Aetna Ins. Co., supra, 9 Cal.3d 566, 574, 108 Cal.Rptr. 480, 510 P.2d 1032; Comunale v. Traders General Ins. Co., 50 Cal.2d 654, 658, 328 P.2d 198.) Breach of the covenant provides the injured party with a tort action for `bad faith' notwithstanding that the acts complained of may also constitute a breach of contract. (Crisci v. Security Ins. Co., supra, 66 Cal.2d 425, 430, 58 Cal.Rptr. 13, 426 P.2d 173; Fletcher v. Western National Life Ins. Co., supra, 10 Cal.App.3d 376, 401, 89 Cal.Rptr. 78.) * * *" Jarchow v. Transamerica Title Insurance Co., 48 Cal.App.3d 917, 122 Cal.Rptr. 470
(1975)
In brief, the Childses rely heavily upon Jarchow as persuasive authority in urging us to recognize a cause of action in the instant case under the tort of bad faith. We cannot.
In Jarchow, bad faith was found because the insurer in that action, breached an explicit duty owed to the insured to take affirmative action to provide the insured with a clear title. This duty was evidenced by the following conditions and stipulations stated in the policy, as taken from the court's opinion in that case:
 "* * * `The Company, at its own cost and without undue delay shall provide (1) for the defense of the Insured in all litigation consisting of actions . . . commenced against the Insured . .; or (2) for such action as may be appropriate to establish the title . . . as insured, which litigation . . . is founded upon an alleged defect, lien or encumbrance insured against by this policy . . .' (Emphasis added.)"
That case is readily distinguishable from the action before us. Here, no such affirmative duty was required of Mississippi Valley. A careful reading of section (c) of the provision in the policy entitled: "3. Defenses and Prosecution of Actions — Notice of Claim to be Given by the Insured", set forth earlier in the opinion, reveals Mississippi Valley was not required to take any action to establish the title as insured. Section (c) only says Mississippi Valley shall have the right to do so. Therefore, without owing a duty to take such affirmative action on this matter, there could be no breach which could support a cause of action for bad faith.
Concluding, this court, in the proper case, has not rejected first party bad faith tort actions against an insurer. SeeWaters v. American Casualty Co. of Reading, Pa., 261 Ala. 252,73 So.2d 524 (1954); Dalrymple v. Alabama Farm Bureau Ins. Co.,267 Ala. 416, 103 So.2d 711 (1958); Nationwide Mutual InsuranceCo. v. Smith, 280 Ala. 343, 194 So. 505 (1967). We are merely holding that, for the reasons even, a claim for *Page 1153 
relief was not stated in this case under that theory of law.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.
 ON REHEARING