This is an appeal from a judgment based on a jury verdict rendered against the defendants in an action for an accounting and breach of contract. We affirm.
On April 16, 1968, Howard Kirkpatrick entered into a contract with the appellants, Joe Fleming and Lily Flagg Builders Supply, Inc. (hereinafter Lily Flagg). The contract provided, in essence, that Howard Kirkpatrick would exchange certain stock certificates representing his 48% interest in Lily Flagg for 48% of the assets of Lily Flagg. The major portion of the assets was represented by Lily Flagg's accounts receivable, and the contract provided that Kirkpatrick *Page 17 
was to be paid 48% of the net collections on all of Lily Flagg's accounts receivable accruing prior to January 31, 1968. The contract indicated that the amount of the accounts receivable was approximately $327,000.
In November, 1972, Kirkpatrick filed this action for an accounting alleging generally that he was due certain amounts under the contract; that he was unable to ascertain the amount owed him and that a determination of the amount owed him was "peculiarly within the knowledge" of Joe Fleming and Lily Flagg. Kirkpatrick asked that the court determine the amount due him from Fleming and Lily Flagg and, further, that the court direct Fleming and Lily Flagg to pay him any amounts due.
For reasons not apparent on the record, no significant action was taken in this case until 1976. Masters were appointed pursuant to Rule 53, ARCP and the masters reviewed Lily Flagg's records in an attempt to ascertain the amount due Kirkpatrick. The masters' report was inconclusive and a jury trial was commenced on November 15, 1977, in Madison County Circuit Court. On November 18, 1977, the jury returned a verdict for $50,116.33 in favor of the plaintiff against both Joe Fleming and Lily Flagg. Judgment was entered accordingly and a motion for a new trial was filed on the following grounds: excessive verdict; verdict against the weight of the evidence; and quotient verdict. On March 20, 1978, the motion for a new trial was denied. This appeal followed.
The appellants contend that there was not sufficient evidence presented at trial to support the jury's determination that the appellants breached the provisions of five contract provisions set out below.
 1. Each of the corporate parties hereto will purchase its stock held by Howard Kirkpatrick, said stock being fifty (50%) per cent of the stock in Bessemer Readi-Mix, Inc., and K F Trucking Company, Inc., and forty-eight (48%) per cent or forty-eight (48) shares of Lily Flagg Builders Supply, Inc. The total payment to be made by the three corporations for the stock of Howard Kirkpatrick shall upon closing of this transaction be SEVEN THOUSAND FOUR HUNDRED SEVENTY 39/100 ($7,470.39) DOLLARS, and in addition thereto in the case of Lily Flagg Builders Supply, Inc., Howard Kirkpatrick shall also be paid an amount equal to forty-eight (48%) per cent on all net collections for all accounts receivable accruing to said corporation prior to January 31, 1968. Said net collections on the accounts receivable are to be arrived at by deducting from gross collections all actual expenses, including but not limited to, attorneys' fees, court costs, the items specified in other paragraphs hereof and one (1%) per cent of all accounts collected as of March 31, 1968, and two and one-half (2 1/2%) per cent of all amounts collected after March 31, 1968, which percentages are to be retained by Lily Flagg Builders Supply, Inc., as its office expense for collecting said accounts.
* * * * * *
 7. Lily Flagg Builders Supply, Inc., shall be responsible for filing all liens on accounts accruing prior to the 31st day of January, 1968, within the time period prescribed by law and pursuing same to a conclusion judgment, and in the event the corporation should elect not to file a lien where the amount of indebtedness exceeds $500.00, then and in that event, the corporation would be liable to Howard Kirkpatrick for his percentage of the net amount that would have
 been collected had such a lien been filed, to be paid not later than the 10th of the month following the expiration of the time allowed by law for filing said lien.
* * * * * *
 12. All notes receivable and all other such items due the corporations as of January 31, 1968, shall be paid to Howard Kirkpatrick in the same manner and on the same percentage as the accounts receivable are paid hereunder. This should specifically include any refund for taxes due to any of the three corporations which arise for any years prior to the *Page 18 
year 1968. It also being expressly understood and agreed that any tax liabilities or tax deficiency which might accrue against any of the said three corporate parties hereto for the taxable year 1967, or any prior taxable year, will be paid out of the accounts receivable of Lily Flagg Builders Supply, Inc., which came into being prior to the 31st day of January, 1968, and these payments will be deducted from the gross accounts receivable.
* * * * * *
 15. Lily Flagg Builders Supply, Inc., shall attempt to procure a deed in lieu of foreclosure on the Florida property on which they have a note and mortgage, and in the event they are unsuccessful, they will proceed to foreclose on the property and shall bid the property in for $65,000.00. If Lily Flagg Builders Supply, Inc., is a successful bidder, or accepts a deed in lieu of foreclosure on the Florida property, it shall forthwith sell said property, but shall not sell said property at less than $65,000.00 without the consent of Howard Kirkpatrick, the proceeds of said sale to be divided and distributed in the same manner as hereinabove provided for accounts receivable.
* * * * * *
 18. The books and records of Lily Flagg Builders Supply, Inc., which relate in any way to the accounts receivable which were acquired prior to January 31, 1968, shall be open at all reasonable times to inspection by Howard Kirkpatrick, his accountant or attorney, and Lily Flagg Builders Supply, Inc., shall furnish to Howard Kirkpatrick each month a written statement of the collections on the aforesaid accounts receivable and each three months shall furnish him a progress report on litigation and other efforts to collect said accounts.
Additionally, the appellants contend that under the contract, only Lily Flagg is liable to Kirkpatrick and therefore Joe Fleming should be absolved from individual responsibility. The appellants also assert that the matter of damages is controlled by the contract and the verdict is excessive.
It is basically the appellants' position that the contractual provisions set out above are clear and unambiguous; that their performance is in accordance with the explicit terms of the contract and there is no evidence of any material breach of any of the contract's terms.
In World's Exposition Shows v. B.P.O. Elks No. 148, 237 Ala. 329,186 So. 721 (1939), this Court observed that every contract implies good faith and fair dealing between the parties.
In 17 Am.Jur.2d Contracts § 256 (1964), the statement is made that
 "it may be said that contracts impose on the parties thereto a duty to do everything necessary to carry them out. When one undertakes to accomplish a certain result he agrees by implication to do everything to accomplish the result intended by the parties." (Footnotes omitted.)
 An eminent commentator has noted that "[i]n any commercial agreement in which the compensation promised by one to the other is a percentage of profits or receipts . . ., there will nearly always be found an implied promise of diligent and careful performance in good faith and of forbearance to make performance impossible by going out of business or otherwise." (Footnote omitted.) 3 A. Corbin, Contracts § 568 (1960).
We have reviewed the testimony and the exhibits and we conclude that there was sufficient evidence to support the jury's determination that Howard Kirkpatrick was entitled to an additional $50,116.33 under these enumerated provisions. Our conclusion is strengthened by the standard of good faith and fair dealing imposed by operation of law on the appellants.
We deem it unnecessary to set out all of the evidence that compels this conclusion. We note, however, that some of the evidence presented, if believed by the jury, would have supported a finding that payments on accounts made the subject of this agreement were directed to purchases made after this contract instead of pre-existing *Page 19 
debts covered by this agreement. There was also evidence that a substantial tax refund inured to the benefit of Lily Flagg as a result of writing off debts as uncollectible and that Kirkpatrick was not credited with his portion of that benefit.
Testimony also indicated that almost one third of the accounts receivable made the subject of this contract were written off as uncollectible and that Kirkpatrick's accountant/bookkeeper had only limited access to Lily Flagg's corporate records.
Suffice it to say that this evidence was disputed, but since it is the function of the jury to resolve controverted factual issues, Adams v. Adams, 294 Ala. 514, 319 So.2d 257 (1975), and the jury is authorized, if not obligated to determine witnesses' credibility and draw inferences from the evidence,Cook v. Sweatt, 282 Ala. 177, 209 So.2d 891 (1968), we will not disturb the verdict if there is competent evidence to support it.
With respect to the individual liability of Joe Fleming, the record reveals that on cross-examination, Mr. Fleming testified that he signed the contract in his individual capacity and that he promised to pay Kirkpatrick his share or indemnify him. These representations, especially in light of the good faith/fair dealing standard would warrant the jury's returning a verdict against Fleming individually.
In brief, the counsel for the appellee has resorted to a lengthy arithmetic exercise to justify the return of a jury verdict far in excess of $50,000. We agree with his conclusions to the extent that we do not consider the jury's verdict so excessive as to warrant a reversal.
Finally, we note that a motion for a new trial was made. The record reveals that the trial court granted the appellants' motion for an extension of time, so that they might review the transcript and then amend their motion for a new trial. All indications are that the trial judge considered the motion for a new trial with commendable diligence and found that it was not well taken. The denial of a motion for a new trial strengthens the presumption of correctness which this Court accords jury verdicts. Walker v. Cardwell, 348 So.2d 1049 (Ala. 1977).
The judgment of the trial court is affirmed for the reasons stated above.
AFFIRMED.
BLOODWORTH, MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.