**BROWN–MARX ASSOCIATES, LTD., et al., Plaintiffs,**

v.

**EMIGRANT SAVINGS BANK, et al., Defendants.**

**Civ. A. No. CV79–PT–1423–S.**

United States District Court, N. D. Alabama, S. D.

Dec. 4, 1981.

As Amended Dec. 7, 1981.

Ollie L. Blan, Jr. and John P. McKleroy, Jr., Spain, Gillon, Riley, Tate & Etheredge, Birmingham, Ala., for plaintiffs.

James L. North and Guy V. Martin, Jr., North, Haskell, Slaughter, Young & Lewis, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes on to be heard on defendant's Motion for Partial Summary Judgment filed on November 5, 1981. Defendant's November 5 motion seeks dismissal of plaintiffs' "Fourth Claim" in which plaintiffs seek recovery under a theory of the "tort of bad faith" as espoused in *Chavers v. National Security Fire & Casualty Co.*, 405 So.2d 1 (Ala.1981).

Plaintiffs have sued as the result of an alleged breach of a loan commitment executed by defendant. Plaintiffs have joined by amendment a "Fourth Claim" which states: "20. Plaintiffs aver that the defendant had an implied *covenant at law* to deal in good faith, fairly, honestly, and to make a good faith effort to prepare for the closing and to close the loan made the subject of the agreement between plaintiffs and defendant; 22. Plaintiffs aver that defendant, by its conduct as stated in the paragraph immediately preceding and by failing to close the loan on November 1, 1979, has breached its duty at law and has dishonored its *covenant* to deal in good faith, to deal fairly, to deal honestly, and to make honest disclosures to the plaintiffs; 23. Plaintiffs aver that the conduct set out

in paragraph 22 above was intentional, wrongful, malicious, and constituted a failure on the part of the defendant to ascertain whether or not there existed any lawful basis for a refusal to make the loan which was the subject of the loan commitment agreement between plaintiffs and defendant; 24. Plaintiffs aver that they have been injured, damaged, and harmed as described herein because of the bad faith failure of the defendant to deal with the plaintiffs, and plaintiffs demand of the defendant compensatory damages as set forth in the First Claim herein and punitive damages in the amount of Five Million Dollars ($5,000,000.00)." (Emphasis added.)

Defendant argues that the Alabama "tort of bad faith" is applicable only to insurance contracts.

Apparently, the first reference to the budding tort of bad faith in an Alabama case was in *Old Southern Life Insurance Co. v. Woodall*, 295 Ala. 235, 326 So.2d 726 (1976), when the court said: "There might be circumstances under *which the failure to pay a claim under a policy of insurance* would create a claim upon which relief may be granted sounding in tort, but such circumstances are not presented in this case." (Emphasis added.) 295 Ala. at 243, 326 So.2d 726.

In *Childs v. Mississippi Valley Title Ins. Co.*, 359 So.2d 1146 (Ala.1978), the issue was stated to be: "[w]hether Alabama should allow recovery of punitive and consequential damages and damages for mental pain and anguish, in an *insured's* suit against his *insurer* predicated upon the *insurer's* bad faith misconduct." (Emphasis added.) 359 So.2d at 1147. Referring to cases wherein Alabama had held insurers liable for either *negligent* or *bad faith* failure to settle *third party* claims, the court in *Childs, supra*, stated: "Concluding, this court, in the proper case, has not rejected *first party* bad faith tort actions against an *insurer*." (Emphasis added.) 359 So.2d at 1152.

In *Vincent v. Blue Cross-Blue Shield, Inc.*, 373 So.2d 1054 (Ala.1979), the court reiterated its statement in *Childs, supra*, and stated: "While this court *might* under appropriate circumstances, *recognize* a tort action for the wrongful refusal to pay a valid claim, facts supporting such circumstances have not been developed here." (Emphasis added.) 373 So.2d at 1056.

In an incisive concurring opinion in *Vincent, supra*, Justice Jones undertook to discuss the elements of this nascent cause of action. Justice Jones premised his discussion of the subject on the "[i]ssue whether the law of Alabama *should recognize* a cause of action *in tort* for the breach *by an insurer of a duty implied by law* to deal fairly and in good faith with its insured so as not to wrongfully deny benefits due under a policy of insurance.

*Essential to the determination* of this issue is the question *whether the law imposes a duty of good faith* and fair dealing in the performance of an insurance contract...." (Emphasis added.) 373 So.2d at 1057.

Justice Jones recognized that "[i]t has long been the law of this state that every contract implies good faith and fair dealing between the parties .... That this *duty may be imposed by the law* is evidenced by a line of cases in this state allowing an action in tort when an insurer refuses, either in bad faith or negligently, to settle a third party claim within policy limits, and such refusal results in a judgment against the insured in excess of policy limits.... I would hold, then, under the proper circumstances, an *insured* may have a tort action against his insurer for the *insurer's* intentional breach of the duty *imposed by law* to deal in good faith *in the evaluation and paying of claims* under a policy of insurance." (Emphasis added.) 373 So.2d at 1058.

In *Vincent, supra*, Justice Embry also speculated that a proper set of facts could bring about recognition of the tort of bad faith. He stated that, "[t]he tort of bad faith has neither been accepted nor rejected in first-party actions in Alabama." 373 So.2d at 1066. Justice Embry discusses this *new* tort solely in the context of insurance contracts.

Using the opinions of Justice Jones and Justice Embry in *Vincent, supra,* as a foundation, the court in *Chavers, supra,* said, "[w]e *recognize* the intentional tort of bad faith *in first party insurance actions.*" (Emphasis added). 405 So.2d at 6. This holding came after a statement that, "First, we must determine whether this jurisdiction *recognizes* a cause of action in tort for *bad faith refusal* of an *insurer to pay its insured* when a loss occurs within policy coverage." (Emphasis added.) 405 So.2d at 4.

In *Gulf Atlantic Insurance Company v. Barnes,* 405 So.2d 916 (Ala.1981), the Supreme Court of Alabama continued to emphasize the relationship between insurer and insured in discussing this new tort. "The question presented by this appeal is whether these facts presented a jury question on the *tort of bad faith refusal* of the *insurance* company to pay the proceeds of the first policy." (Emphasis added.) 405 So.2d at 923. "[I]t is desirable to restate once again the requirements, under Alabama law for establishment of the tort of bad faith refusal to pay a valid claim." 405 So.2d at 923. "Bad faith is the intentional failure *by an insurer* to perform the *duty implied by law* of good faith in fair dealing." 405 So.2d at 924.

In *Cambron v. Association Life Insurance Co., Inc.,* 405 So.2d 17 (Ala.1981), the court refers to *Chavers, supra,* "[i]n which we recognized the tort of bad faith refusal *to pay an insurance claim.*" (Emphasis added.) 405 So.2d at 17.

Under the doctrine of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court must follow state law in a diversity case. For the reasons discussed herein, the court concludes that no Alabama appellate court has decided the issue of whether the duty contemplated by the tort of bad faith applies to parties other than insureds and insurers whose relationship grows out of contract.

This conclusion is supported by Justice Almon's statement in *Chavers, supra,* that "[t]he language of the opinion, as well as the authority relied upon to justify the recognition of the tort, is *arguably* broad enough to imply this duty in every contractual relationship." (Emphasis added.) 405 So.2d at 15.

Thus, the court must make an "educated guess" as to how the State's Supreme Court would rule. *Benante v. Allstate Ins. Co.,* 477 F.2d 553 (5th Cir. 1973); *Nobs Chemical, U.S.A., Inc. v. Koppers Co., Inc.,* 616 F.2d 212 (5th Cir. 1980).

The repeated emphasis in *Vincent, Chavers, Gulf Atlantic* and *Cambron* on the insurance relationship would appear to indicate that the new tort is limited to insurance cases.[1] The only basis for a contrary argument arises from statements in the various cases similar to the following in *Chavers*: "[t]he long standing legal principle in this state which holds that every contract carries with it an implied in law duty of good faith and fair dealing. See *World's Exposition Shows, Inc. v. B. P. O. Elks, No. 148,* 237 Ala. 329, 186 So. 721 (1939)." A reading of *World's Exposition, supra,* reflects that it does not refer to a duty implied in law. *World's Exposition, supra,* states that, "Every *contract,* as has often been stated, implies good faith and fair dealing between the parties." (Emphasis added.) 237 Ala. at 331, 186 So. 721.

Interestingly, in referring to *World's Exposition,* Justice Jones in *Vincent* did not refer to an "implied in law duty." He merely said that every *contract* implies good faith and dealing. He proceeds to say, "That this duty *may be* imposed by law is evidenced by a line of cases in this State allowing an action in tort when an insurer refuses, either in bad faith or negligently, to settle a third-party claim within policy limits, and such refusal results in a judgment against the insured in excess of policy limits." (Emphasis added.) 373 So.2d at 1058.

---

1. In Smith, *The Status of the Tort of Outrage as it Exists Today in Alabama and other Jurisdictions,* 40 Ala.Law. 568 (1978), the author, in discussing actions in tort arising out of contract, says: "[w]hile one, the tort of bad faith, has been developed *specifically for abused insurance claimants.*" (Emphasis added.) 40 Ala.Law. at 568.

It is not disputed that every contract carries with it an implication that the parties will act in good faith. Adopting the common law rule the Uniform Commercial Code provides that, "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement." Ala.Code § 7–1–203 (1975). That which is implied in the language of a contract is as much a part of the contract as that which is expressed. *Broyles v. Brown Engineering Co.*, 275 Ala. 35, 151 So.2d 767 (1963). The failure of a party to act in good faith may be evidence that a contract has been breached. *California Lettuce Growers, Inc. v. Union Sugar Co.*, 45 Cal.2d 474, 289 P.2d 785 (1955). Unless the *law* implies the appropriate *duty*, however, there is no basis for an action in tort.[2]

Justice Jones recognized this distinction in *Vincent, supra*, when he criticized the language in *Richardson v. Employers Liability Assurance Corp.*, 25 Cal.App.3d 232, 102 Cal.Rptr. 547 (1972), which stated: "In every insurance policy there is implied by law a *covenant* of good faith and fair dealing." (Emphasis added.) Justice Jones recognized a distinction between an implied *covenant* and a *duty* implied by law. 373 So.2d at 1059–1060. Only the latter invokes the bad faith tort doctrine.

It has been recognized that the duty imposed in the so-called tort of bad faith in third-party insurance actions is similar to the duty imposed in cases holding insurers liable for bad faith refusal to settle within the coverage limits of a liability insurance policy. Referring to the tortious breach of an *insurer's* duty of good faith and fair dealing when dealing with its *insured* as being a "[d]istinct tort which has recently emerged in California . . . .," the court in *Farris v. USF&G*, 284 Or. 453, 587 P.2d 1015 (1978), quoting *Santilli v. State Farm Life Ins. Co.*, 278 Or. 53, 562 P.2d 965 (1977), stated: "This tort developed as an outgrowth of the cause of action for an insurer's bad faith refusal to settle within the coverage limits of a liability insurance policy. See, e. g., *Groce v. Fidelity General Ins. Co.*, 252 Or. 296, 448 P.2d 554 (1968) . . . ." *Farris, supra*, points out that the California courts perhaps mistakenly extended the doctrine of "bad faith refusal to settle" cases to "bad faith refusal to pay" cases without recognizing that in the first instance a fiduciary duty is involved which is not present in the second instance.

Plaintiffs argue in their first brief that, "The underlying rationale for the recognition and acceptance of the tort of· bad faith is found in an early Alabama case of *World's Exposition Shows, Inc. v. B. P. O. Elks, No.· 148*, 237 Ala. 329, 186 So. 721 (1939). (*Chavers*, 405 So.2d at 6.) This case does not involve an insurance contract. It stands for the legal principle that every contract carries with it an *implied in law* duty of good faith and fair dealing. This applies to a loan commitment contract such as the one issued by the predecessor of the defendant in this case. A violation of duty of good faith and fair dealing forms the basis for a tort action for bad faith and recovery of punitive damages." In a subsequent brief, plaintiffs argue that, "[i]t is patently untrue for defendant to argue that this is the first time this tort [bad faith] has been recognized in the State of Alabama."

Plaintiffs thus rely heavily on the language in *Childs, supra*, which states that, "Every contract contains an implied in law covenant of good faith and fair dealing . . . . Breach of the covenant provides the injured party with a tort action for 'bad faith' notwithstanding that the acts complained of may also constitute a contract."[3]

The court notes that this language was total dictum in *Childs, supra*, and except as applied to an insurance contract, the similar language was dictum in *Chavers, supra*. It

---

2. In Burton, *Breach of Contract and the Common Law Duty to Perform In Good Faith*, 94 Harv.L.Rev. 369 (1980), a lengthy and detailed article, the author discusses the doctrine exclusively in a breach of contract context.

3. The language in *Childs* finds its root in *Jarchow v. Trans-America Title Ins. Co.*, 48 Cal. App.3d 917, 122 Cal.Rptr. 470 (1975), and is the same type language which was criticized by Justice Jones in *Vincent*.

is further inconsistent with the approach taken in the continuum of cases leading to *Chavers* and Justice Jones' opinion in *Vincent, supra.*[4]

Interestingly, the court in *Chavers, supra,* did not refer to any prior adoption of the tort of bad faith in contract cases. If the principle of an *implied in law duty* of good faith, of the type necessary to a tort, predates *Chavers, supra,* it would have not been necessary for the Alabama Supreme Court to previously say that Alabama has "neither accepted nor rejected the tort of bad faith in first party actions." *Lavoie v. Aetna Life and Casualty Co.,* 374 So.2d 310 at 311 (Ala.1979). If the tort was in existence under Alabama law prior to *Chavers, supra,* it would have been inappropriate for the court in *Vincent, supra,* to say, "[t]his court *might,* under appropriate circumstances, *recognize* a tort action for the wrongful refusal to pay a valid claim . . . ." (Emphasis added.) 373 So.2d at 1056.

Further, the court would not have said in *Chavers, supra,* "[w]e have indicated an increasing willingness to *recognize* such a cause of action . . . ." (Emphasis added.) 405 So.2d at 5.

Finally, this court notes that the court in *Chavers, supra,* said that, "A majority of this court, in one way or another, has indicated that, in a proper case, the court would consider the *adoption* of the tort of bad faith *refusal to honor a valid claim* in an *insurance contract* context." (Emphasis added.) 405 So.2d at 10.

Alabama has long recognized that obligations may be implied in contract, in law, or both depending on the circumstances. The distinctions are often shadowy at best. In a good discussion of the distinction, between *duties* implied by law and contractual obligations implied by law in *Berry v. Druid City Hospital Board,* 333 So.2d 796 (Ala.

1976), Justice Shores said, "The duty of a hospital to use due care in the treatment of its patients is an obligation created by law; and the breach of that duty is a failure to observe a reasonable standard of due care under the circumstances which gives rise to the tort action. There exists a *duty* implied by *law,* as opposed to a *contract* implied by law, to exercise due care, the breach of which gives rise to an action in tort." (Emphasis added). 333 So.2d at 799.

In *C & C Products, Inc. v. Premier Industrial Corp.,* 290 Ala. 179, 275 So.2d 124 (1972), Justice Harwood said:

"The duty created by law which gives rise to an ex delicto action under *certain circumstances* upon breach of a contract is a duty *collateral to the contract.* The contract creates, or induces, or causes a condition, or state of things, which furnishes the occasion for the tort." (Emphasis added.)

290 Ala. at 186, 275 So.2d 124.

The distinction between imposing a duty and implying a contract is also recognized in *Waters v. American Cas. Co. of Reading, Pa.,* 261 Ala. 252, 73 So.2d 524 (1953).

In speaking of implied *terms* of contracts, Justice Jones, in *Berry, supra,* said, "To be sure; the law imposes (*or may impose*), arising out of such relationships, a legal duty, the breach of which gives rise to an action ex delicto . . . ." (Emphasis added.) 333 So.2d at 803.

In *Hamner v. Mutual of Omaha Insurance Co.,* 49 Ala.App. 214, 270 So.2d 87, *cert. denied,* 291 Ala. 781, 282 So.2d 256 (1973), the Court of Civil Appeals of Alabama, in discussing a "duty implied by law," said, "[s]uch duty being not expressed in the contract, but arising by implication of law from the *relation of the parties* created by contract . . . ." (Emphasis added.) 270 So.2d at 90.[5]

---

**4.** One of the earliest cases to discuss the good faith and fair dealing, whose language has been quoted without reference in some subsequent California cases in *Brassil v. Maryland Casualty,* 210 N.Y. 235, 104 N.E. 622 (1914), a case involving refusal to settle a claim. This case refers to the "[o]bligation of good faith in

carrying out what is written," as "[a] *contractual* obligation of universal force which underlies all written agreements." 104 N.E. at 624. Also see *Gray v. Nationwide Mut. Ins. Co.,* 422 Pa. 500, 223 A.2d 8 (1966).

**5.** In 17 Am.Jur.2d *Contracts* § 521 (1964) it is

That Alabama has, prior to *Chavers, supra,* recognized the obligation of good faith as an implied *promise* is evidenced by *Fleming v. Kirkpatrick,* 371 So.2d 16 (Ala.1979), where the court says:

> "In *World's Exposition Shows v. B. P. O. Elks, No. 148,* 237 Ala. 329, 186 So. 721 (1939), this court observed that every *contract implies good faith and fair dealing* between the parties.
>
> In 17 Am.Jur.2d *Contracts* § 256 (1964), the statement is made that 'it may be said that *contracts* impose on the parties a duty to do everything necessary to carry them out. When one undertakes to accomplish a certain result he *agrees by implication* to do everything to accomplish the result intended, by the parties.' (Footnotes omitted).
>
> An eminent commentator has noted that '[i]n any commercial agreement in which the compensation promised by one to the other is a percentage of profits or receipts ..., there will nearly always be found an *implied promise* of diligent and careful performance in *good faith* ...." (Emphasis added.)

371 So.2d at 18.[6]

This court concludes that the step that the opinions of the Supreme Court of Alabama prior to *Chavers* precursed was, in the case of insurance contracts, to imply the obligation of evaluating and paying claims in good faith as a *duty in law* as opposed to its being an *implied covenant* in contract. It has now taken this step with regard to *insurance contracts.*

That the action taken by the Alabama Supreme Court is limited to insurance contracts is further demonstrated by the test adopted by the court in *Chavers, supra.* The court held that the tort, "[a]rises for an insurer's intentional refusal to settle a direct claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of the fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal." 405 So.2d at 7. Among the evidence which is relevant to this test includes the nature of the "investigation" made by the insurer. In *Gulf Atlantic, supra,* the court says: "The relevant question before the trier of the fact would be whether a *claim was properly investigated* and whether the results of the investigation were subject to a cognitive *evaluation and review.*" (Emphasis added.) 405 So.2d at 924. This language is peculiarly appropriate to insurance claims rather than contracts in general.

There is no inconsistency in the bad faith tort being applicable to insurance claims rather than to breaches of all contracts. The law of insurance is quite generally treated as a branch of law unto itself. Insurance companies and insurance contracts are subject to strict regulation. The business of insurance has historically been treated by legislatures and courts with a view to the public interest. Alabama has a Department of Insurance and an Insurance Commissioner who has a wide variety of powers and duties relating to insurance companies. Title 27, Code of Alabama (1975). Provisions in insurance contracts are construed liberally in favor of the insured. Various policy provisions are required or prohibited by statute. In Justice Embry's opinion in *Vincent, supra,* he said: "The law will not allow an insurer to willfully refuse to evaluate or honor a claim with the knowledge that the avowed purpose of the insurance contract was to protect the insured at his weakest and most perilous *time of need. In no other area of*

---

stated: "Ordinarily, a breach of contract is not a tort. But a state *may modify the substantive and procedural law* so that recovery may be had in tort for a breach of contract." (Emphasis added.) The nature of the recognized duty may vary. Alabama recognizes a duty of *reasonable care* in third party insurance claims, *Nationwide Mutual Ins. Co. v. Smith,* 280 Ala. 343, 194 So.2d 505 (1966); but not in first party claims, *Chavers, supra.*

**6.** In Comment, *Contractual Recovery for Negligent Injury,* 29 Ala.L.Rev. 517 (1978), the author refers to the duty of good faith and fair dealing and says in a footnote: "Courts sometimes say that such obligations are implied by law. Since these obligations arise from the conduct and common understanding of contracting parties, however, courts could more accurately find that they are implied in fact." 29 Ala.L.Rev. at 521.

*the law* is there more of a call for good faith at such a crucial time than in the area of *insurance contracts.*"[7] (Emphasis added.) 373 So.2d at 1067. Alabama's application of this new tort rule to insurance contracts is consistent with Professor Prosser's analysis of the relation between tort and contract and the social policies which underlie the creation of tort actions. In Prosser, *Handbook of Law of Torts* (3rd Ed. 1964), it is stated:

"The fundamental difference between tort and contract lies in the nature of the interest protected. Tort actions are *created* to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are *imposed by the law*, and are based primarily upon *social policy*, and not necessarily upon the will or intention of the parties." (Emphasis added.)

*Id.* at 634.

Like other jurisdictions, Alabama has applied the nonfeasance-misfeasance dichotomy in determining when the law will imply a duty giving rise to a tort action. *Berry, supra.* Since the tort of bad faith could presumably involve a nonfeasance, it would be inconsistent with the general rule that non-performance is ordinarily a breach of contract only. Again, however, Professor Prosser recognizes an exception to the general rule in the case of public oriented business and further says:

"Another type of exception arises where the contract results in or accompanies *some relation between the parties* which the law recognizes as giving rise to a duty of affirmative care." (Emphasis added.)

Prosser, *Handbook of Law of Torts* (3rd Ed. 1964), at 637.[8]

Again, we have a basis for the tort's application to insurance companies which is likely not applicable to contractors in general.

There is no indication that the Supreme Court of Alabama has given any consideration to the implications of applying this tort to contracts in general. Would it be applicable to someone who fails to pay his grocery bill or rent? Would it be applicable to the maker of a note? Where would the line be drawn if the tort is not restricted to insurance contracts?

This court concludes that the Alabama Supreme Court has not *recognized* an implied duty in law, as distinguished from an implied covenant, of good faith except in "an insurance contract context." The court thus further concludes that the Supreme Court of Alabama has not applied the bad faith tort action to other than insurance contracts. This court is of the opinion that the Supreme Court of Alabama would be hesitant to do so without a full exploration of the ramifications of such an action.

Defendant's Motion for Summary Judgment addressed to the "Fourth Claim" will be granted.

In view of the court's holding on this question, it is not necessary for the court to address the question of whether the facts of this case, assuming the application of the

**7.** It is not unusual that the courts would allow recovery of punitive damages in some cases grounded on contract and not others. At various times, exceptions have been recognized in actions for breach of contract to marry; actions against common carriers, public utilities and other public service companies; and actions when the relationship between the parties is fiduciary. Sullivan, *Punitive Damages in the Law of Contract: The Reality and Illusion of Legal Change*, Vol. 6T, Minn.L.Rev. 207 (1977). Restatement (Second) of Contracts § 355 (1981) provides that "Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." In the "Illustrations" following this provision it is stated: "In some instances the breach of

contract is also a tort, as may be the case for a breach of *duty* by a public utility." (Emphasis added.) Restatement (Second) of Contracts (1981) at 154.

**8.** For a case which discusses the unusual relationships between the parties that have led to a finding of a "special" legal duty, see *Sandler v. Lawn-A-Mat Chemical & Equipment Corp.*, 141 N.J.Super. 437, 358 A.2d 805 (1976). This case refers to the "special duty" of good faith and fair dealings, which California courts in *Fletcher v. Western Nat. Life Ins. Co.*, 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970), and other cases, have held that an insurer owes to an insured. *Fletcher* is cited in *Chavers* and *Childs*.

bad faith tort, would be sufficient to meet the *Chavers* test. The court notes that *Gulf Atlantic, supra,* places the duty on the trial court to make an initial determination as to whether there is a lawful basis for "refusal." The court's references to the good faith of the defendant in its Memorandum Opinion entered on June 15, 1981 were certainly not made in the context of such an analysis. The court has grave doubts as to whether the facts of this case would satisfy plaintiffs' initial burden under the *Chavers* test. In any event, this court concludes that the Supreme Court of Alabama would not elect to extend the bad faith tort doctrine, to other than insurance contracts, based on the facts of this case.