**William T. YOUNGBLOOD,**
**Plaintiff–Appellee,**

v.

**LAWYERS TITLE INSURANCE CORP.,**
**Defendant–Appellant.**

**No. 89–7667.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 1, 1991.

Sidney H. Schell, Mobile, Ala., Dana Garrett Diment, Smith & Diment, Carrollton, Ga., for defendant-appellant.

Vincent F. Kilborn, Kilborn & Roebuck, Mobile, Ala., J. Rushton McClees, Sirote & Permutt, P.C., Birmingham, Ala., for plaintiff-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

In a jury trial,[1] the district court directed a verdict in favor of plaintiff Youngblood

---

1. There being diversity, this case was removed from the Alabama Circuit Court.

as to liability of Lawyers Title Insurance Corporation for breach of contract with respect to a title defect not shown in the exceptions of its title insurance policy. 746 F.Supp. 71. The issue of damages was reserved for the jury. The court concluded that damages on Youngblood's claims for fraud and bad faith were limited to punitive damages. Lawyers Title appeals from the judgment entered against it for $50,000 compensatory damages and $500,000 punitive damages. Lawyers Title contends that its obligation under the policy was to indemnify its insured for any loss, and that Youngblood suffered no financial loss; that there was no basis for punitive damages; and that if punitive damages were properly awarded, a statutory cap of $250,000 under the Alabama Tort Reform Act is applicable. We conclude that the court erred as a matter of law in finding a breach of contract at the time of closing, and we reverse the award of compensatory and punitive damages.

Appellee's motion to increase punitive damages and appellant's cross-motion to reduce punitive damages were carried with the case. We deny appellee's motion on the merits and deny appellant's motion as being rendered moot.

## FACTS

Appellee Youngblood purchased land in Baldwin County, Alabama on June 15, 1984 from Garrison Enterprises, Inc. for $125,-000. He obtained a commitment for title insurance from an agent of appellant Lawyers Title. An easement was omitted from the stated exceptions in the title commitment, which easement was described in the deed dated January 18, 1955, and recorded in Deed Book 222, Page 213, Probate Records of Baldwin County, Alabama. The omission occurred as a result of an oversight by a typist who worked for the agent of Lawyers Title. Youngblood subsequently conveyed the eastern portion of the land to Albert Metzger in late 1984 for $69,000, and the western portion to a third party in 1987 for $70,000. The omitted easement, a 33–foot right-of-way, over a 75–foot lot, pertained to the Metzger parcel which Youngblood had conveyed without warranty for easements. Metzger did not obtain title insurance from Lawyers Title. In 1986 Youngblood sold the vendor's lien note held for collection of the outstanding purchase price from Metzger. The existence of the easement came to Youngblood's attention in 1987 when he sold the western portion of the original lot.

Youngblood communicated with Lawyers Title about the easement by a series of letters, beginning in June 1987 and concluding in February 1988. Lawyers Title internally denied the claim in October 1987, although it continued to communicate with Youngblood about handling the problem. Youngblood's request, according to an internal telephone memorandum of Lawyers Title, was that the insurance company either "fix it or pay him." As a basis for not paying Youngblood's claim, Lawyers Title took the position that he had not sustained a loss. There was also a question of whether a policy had been issued, but that matter was resolved. Youngblood filed suit in July 1988.

## PROCEEDINGS BELOW

The matter was tried before a jury in April 1989. The court ruled as a matter of law that there was a contract to insure the title as represented in Section B of the commitment, and since it was not as represented in Section B, the contract was breached at the time of the closing. The court stated that "[t]here was a breach of contract in that there was defective title." The issues of damages on Youngblood's theories of breach of contract, bad faith refusal to pay claim and reckless misrepresentation were reserved for the jury, which returned a verdict awarding Youngblood $50,000 in compensatory damages for breach of contract and $500,000 in punitive damages for misrepresentation and bad faith. The $50,000 amount was based on Youngblood's testimony that the value of the land without the easement was $125,-000 and the value of the land with the easement was $75,000. The trial court conducted a hearing pursuant to Alabama law to receive any relevant additional evidence

concerning the amount of punitive damages. Upon its independent reassessment, the court awarded $500,000 in punitive damages.

A motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was filed by Lawyers Title. In denying the motion, the court found that there was ample evidence upon which the jury could have found the defendant Lawyers Title liable for reckless misrepresentation and bad faith. The conduct of Lawyers Title, according to the district court, "was and still remains reprehensible in character ... showing callous disregard for the law and citizenry of [Alabama]," because it would not acknowledge that its interpretation of its contractual obligation was incorrect until the issue was decided by an appellate court.

## DISCUSSION

Lawyers Title attacks the ruling of the court as a matter of law on the breach of contract issue and asserts errors in the determination of punitive damages on numerous grounds. Also, Lawyers Title asserts that the nature of title insurance as an indemnity for loss as opposed to a guarantee of clear title was misunderstood by the court.[2]

■ *Stewart Title Guaranty Co. v. Goldome Credit Corp.*, 494 So.2d 10 (Ala. 1986), is the principal case relied upon by appellee Youngblood as controlling law on the issue of loss with respect to title insurance. Appellee asserts that in *Stewart* the Alabama Supreme Court specifically rejected the exact argument of Lawyers Title that a title insurance company has the duty to indemnify only upon the occurrence of a loss. Lawyers Title asserts that *Stewart* is factually distinguishable and therefore not conclusive. We agree.

In *Stewart*, the title company knew of a prior mortgage before it issued the policy to a mortgagee, the company took steps to clear the defect, and its agents abandoned their efforts and did not follow through to disencumber the title. By not disclosing the known prior lien to the mortgagee, an act considered by the court to be a concealment of the title defect, and by not clearing the lien before issuing the policy, Stewart breached its contract to insure against loss from such prior liens. The junior lien of the insured mortgagee was worthless and no purpose would be served by the mortgagee's foreclosing against the purchasers of the land who had defaulted. Since the insurance company had subrogation rights under the title policy, the court stated: "let Stewart resolve the problems in the mortgage without entangling the assets of those whom it insures against just such problems." 494 So.2d at 12.

A careful review of the facts is crucial to understanding the nature of the district court's error in determining a breach of contract. The facts here, where the warranty of title in the conveyance from Youngblood to Metzger excluded easements of record, and where the vendor's lien note has been assigned to a bank by Youngblood, represent a transaction with no adverse financial consequences to the insured and no remaining interest held by the insured.[3] Also, in sharp contrast to *Stewart*, Lawyers Title did not attempt to

---

**2.** Lawyers Title cites several authorities, including the leading treatise on title insurance, D. Barlow Burke, Jr., *Law of Title Insurance*, § 1.3.1 at 18 (1986) (citing numerous cases and commentators):

Payment for loss is made according to the terms of the policy. This is a truism for any type of insurance, but it has special meaning for title insurance because those terms and conditions of coverage make plain, in their totality, that a title insurance policy is *not an agreement to guarantee the state of title*, but is, rather, *an agreement to indemnify the policy holder*. (Emphasis added).

**3.** Since Metzger did not obtain title insurance from Lawyers Title, and has no basis for a claim, it is irrelevant for this case whether or not the value of the property held by Metzger was diminished by the existence of the easement, and whether he suffered a loss. Lawyers Title conceded that it had a potential duty to defend a frivolous breach of warranty suit if brought by Metzger; and, until it was confirmed that Youngblood had sold the note, Lawyers Title acknowledged that it would have liability if the value of the property were reduced by the easement to less than the balance of Metzger's debt.

or commit to clear the encumbrance before the closing or before issuing the title commitment. These distinctions from *Stewart* are critical. What was persuasive to the district court, based on *Stewart*, was that an insured should not have to sue to foreclose its interest and have its title disputed in a lawsuit before it suffers a loss under a title policy, *i.e.*, it should not have to wait for something "bad" to happen. We conclude that the Alabama Court's holding in *Stewart* is not an applicable and controlling principle under the facts here. We note that the *Stewart* court stated that the principle which it might apply in an appropriate case would be that "a mortgagee must sue to enforce or reform the mortgage and have its title disputed before it suffers a loss under a title policy," citing *Miller v. Commercial Standard Ins. Co.*, 248 So.2d 675 (Fla.Dist.Ct.App.1971)[4]. 494 So.2d at 13. We conclude therefore that the district court plainly erred in directing a verdict for breach of contract under the terms of the insurance policy without proof of actual financial loss.[5] *See Newman v. St. Paul Fire and Marine Ins. Co.*, 456 So.2d 40, 41 (Ala.1984) (courts are not at liberty to rewrite policies to provide coverage not intended by parties).

■ We next turn to Lawyers Title's assertion that punitive damages were improperly awarded as a consequence of an erroneous determination by the court on the issue of breach of contract, affecting the

finding of bad faith refusal to pay claim. The scenario created by the questioning at trial and the argument to the jury, carried forward as appellee's argument before this court, is that Lawyers Title's practice of waiting until a loss occurs works a fraud against the public. We disagree. The evidence was wholly lacking to support a verdict based on bad faith when Lawyers Title had at least an arguable reason to deny the claim, and a legitimate dispute existed. *ALFA Mutual Ins. Co. v. Smith*, 540 So.2d 691, 695 (Ala.1988); *Bowers v. State Farm Mutual Auto. Ins. Co.*, 460 So.2d 1288, 1290 (Ala.1984). We find its reason to deny the claim to be legally correct. *Cf. Childs v. Mississippi Valley Title Ins. Co.*, 359 So.2d 1146, 1152 (Ala.1978) (title insurer had no duty under the policy to act to clear title, and no claim for bad faith was presented).[6] Youngblood was required to prove that he was entitled to a directed verdict on the breach of contract claim to establish a bad faith refusal to pay claim. *Union Bankers Ins. Co. v. McMinn*, 541 So.2d 494, 497 (Ala.1989).

With respect to reckless misrepresentation, the evidence showed only an unintentional typographical omission, which is an insufficient basis for awarding punitive damages. *See Mobile Dodge, Inc. v. Waters*, 404 So.2d 26, 28 (Ala.1981) (pre-dating Tort Reform Act).

The district court erred in permitting the jury to consider punitive damages under

---

**4.** The *Miller* court stated:

"[t]he title insurance contract is not a continuing obligation to purchase a mortgage which goes sour ... but rather to defend the title insured against a claim of its invalidity." 248 So.2d at 676.

**5.** The relevant policy provisions provide:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, LAWYERS TITLE INSURANCE CORPORATION, A Virginia corporation, herein called the Company, insures ... against

loss or damage ... sustained or incurred by the insured by reason of:

. . . . .

2. Any defect in or lien or encumbrance on such title ...
EXCLUSIONS FROM COVERAGE
The following matters are expressly excluded from the coverage of this policy:

. . . . .

3. Defects, liens, encumbrances, adverse claims, or other matters ... (c) Resulting in no loss or damage to the insured claimant....

**6.** In *Childs*, the court noted that the appellants "with commendable candor ask that this appeal

either theory.[7] In addition, the court erred in assessing an award of $500,000 punitive damages upon its independent review,[8] where there was no basis in fact or law of bad faith or reckless misrepresentation to support punitive damages. Therefore, the court abused its discretion in denying the motion of Lawyers Title for judgment notwithstanding the verdict, or in the alternative, for a new trial.

## CONCLUSION

We reverse the judgment of the district court awarding $50,000 compensatory damages and $500,000 punitive damages, and remand with directions to enter a verdict in favor of Lawyers Title.

REVERSED and REMANDED with directions.

---

not be decided upon ... a claim for breach of contract." 359 So.2d at 1152.

**7.** The jury verdict did not differentiate between fraud and bad faith with respect to punitive damages.

**8.** A discussion of the applicability of the $250,000 cap on punitive damage awards under Ala. Code Section 6–11–21, including the exception for engaging in a pattern or practice of wrongful conduct, is not necessary in reaching this court's decision.